Shawn A. McMillan, Esq. – SBN: 208529
Stephen D. Daner, Esq. – SBN: 259689
Adrian M. Paris, Esq. – SBN: 301355
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Telephone: (858) 646-0069
Facsimile: (858) 746-5283

Tiffany T. Chung (SBN 275981)
Tiffany@chunglegal.com
Law Offices of Tiffany Chung
800 W. 6th Street, # 800
Los Angeles, CA 90017
Tel: 310-363-0327
Fax: 888-402-2078

Attorneys for Plaintiffs Edison Gatlin, by and through
his successors in interest, Clarissa Simms and Edward Gatlin;
and Clarissa Simms and Edward Gatlin, individually

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edison Gatlin, a deceased minor, by and through his successors in interest, Clarissa Simms and Edward Gatlin; Clarissa Simms, an individual; and Edward Gatlin, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Contra Costa County, a public entity; Barbara Crespo, an individual; Christy Rowland, an individual; Alexandria Kotran, an individual; Eleanor Walker, an individual; Jennifer Lund, an individual; Kimberly Baker, an individual; Marcy Williamson, an individual; Craig Thurmond, an individual; Leslie Davis, an individual; Kerissa Lynch, an individual; Georgette Shipe, an individual;  Kimberly Miller, an individual; Jamie Lopez, an individual; Valley-mountain Regional Center, Inc., a California corporation; Jacquie Pearson, an individual; Danielle Wells, an individual; Cindy Mix, an individual; Tracy Vaughn, an individual; Julie De Diego, an Individual; Danielle Esbit-ayala, an | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>**FIRST CLAIM FOR RELIEF**<br>        **Violation of Constitutional Rights, 42 U.S.C. § 1983 (Unwarranted Seizure and Continued Detention)**<br><br>**SECOND CLAIM FOR RELIEF**<br>        **Violation of Constitutional Rights U.S.C. §1983 (Deception in the Presentation of Evidence)**<br><br>**THIRD CLAIM FOR RELIEF**<br>        **Violation of Constitutional Rights U.S.C. 1983 (Failure to Provide Dependent Minor Continued Safety and Security and Even Minimally-Adequate Care)**<br><br>**FOURTH CLAIM FOR RELIEF**<br>        ***Monell*-Related Claims**<br><br>**FIFTH CLAIM FOR RELIEF**<br>        **Wrongful Death - CCP §377.60**<br><br>**SIXTH CLAIM FOR RELIEF**<br>        **Breach of Mandatory Duties** |

1  individual; Ryan Lee, an individual;
   Desiree Clifton, an individual; Angel's
2  Haven 2 Residential Care, a California
   Corporation; Angel's Haven, business
3  form unknown; Angel's Haven 3,
   business form unknown; Arquero
4  Ganilyn, an individual; Renalyn
   Arquero, an individual; Francisco
5  Llanes, an individual; Chescka
   Mendoza, an individual; Jessica Pate,
6  an individual; Cecile Corpuz Llanes,
   an individual; Gabriel Tauro, an
7  individual; Maria Cecilia Tauro, an
   individual; Jeffery Collins, an
8  individual; Jenna-ray Foster Family
   Home, business form unknown;
9  Jennifer Dillingham, an individual;
   and Does 1 Through 50, inclusive.

**SEVENTH CLAIM FOR RELIEF**
    **Breach of Duties Imposed Under**
    **Special Relationship**

**EIGHTH CLAIM FOR RELIEF**
    **Negligence**

**NINTH CLAIM FOR RELIEF**
    **Intentional Infliction of Emotional**
    **Distress**

**[JURY TRIAL DEMANDED]**

# PROLOG

Edison Gatlin was born severely disabled with epilepsy, cerebral palsy, and serious intellectual disabilities. He was nine years old when he was seized from his mother by Contra Costa County social services agents on September 19, 2014. The day Edison was taken from his mother, he was well nourished and showed no signs of distress whatsoever. It took the County and its cohorts five years to kill him. But ultimately, they did exactly that – they killed him.

During his dependency and while under the "care" of the Defendants, Edison was bounced from one foster care placement to another – never receiving the care he needed. Finally, on May 7, 2019 Edison was left with Angel's Haven 2 Residential Care, a residential care facility in Stockton, California. He remained there until one night, alone and forgotten, he was left to die. During his time in County custody the Defendants had a legal and moral obligation to supervise Edison's care - that is, to ensure his continued safety and security and to ensure he received at least minimally adequate care and supervision.

Unfortunately, Defendants, and each of them, failed to meet their legal and moral obligations, and by December 8, 2019, Edison Gatlin was found face down on the floor, dead. Edison was only 14 years old. This complaint is brought to hold those responsible accountable for their actions and inactions as alleged morefully herein.

**JURISDICTION AND VENUE**

1. This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, over Plaintiffs' claims for Violation of Civil Rights 42 U.S.C. §1983.

2. The acts and omissions alleged in this Complaint (hereinafter "Complaint") occurred in the County of Contra Costa, and it is believed that all living parties and public/private entity parties currently reside in or are situated in the County of Contra Costa.

3. This action is brought, at least in part, pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and or omissions taken under color of law which violated Plaintiffs' rights arising under the 1st, 4th, and 14th Amendments to the United States Constitution. In addition, this action is brought to seek redress for Defendants' acts and/or omissions which resulted in their failure to adhere to the mandatory statutory duties they owed to the Plaintiffs under both federal and state law.

4. This action also arises under California Code of Civil Procedure §377.60 and §377.30 for the wrongful death of Edison while Edison was in Contra Costa County's care, custody and control.Plaintiff Edison Gatlin, died at fourteen years of age and left no issue or surviving spouse.

5. Plaintiffs Clarissa Simms and Edward Gatlin are Edison's natural parents whose parental rights were never terminated and thus have standing under CCP §377.60(a) to bring this action. Clarissa Simms and Edward Gatlin are rightful heirs under CCP §377.60(a) and Probate Code §6402(b) and §6450(a).

6. There is no known guardian or conservator on behalf of Edison Gatlin to initiate a claim or lawsuit.

7. Venue is proper in the United States District Court for the Northern District of California because a substantial part of the acts or omission complained of herein occurred primarily in Contra Costa County, and it is believed that many living

parties named herein currently reside in, maintain offices in, and/or are responsible for enforcing the laws relevant to this litigation in Contra Costa County.

8.     These allegations are based on Plaintiffs Clarissa Simms and Edward Gatlin's personal knowledge, investigation by Plaintiffs' Counsel, and on information and belief.

## The Parties

9.     EDISON GATLIN ("Edison), the Decedent on whose behalf the survival claims are asserted, died on December 8, 2019 in Contra Costa, California where he was neglected and/or mistreated to the point he died. At the time of his death Edison was a minor dependant of Contra Costa County and under its exclusive custody, care, and control. Edison died without a will. His parents Clarissa Simms and Edward Gatlin are his intestate heirs and beneficiaries. No proceeding is now pending in California for administration of Edison's estate. Clarissa Simms and Edward Gatlin qualify as Edison's successors in interest pursuant to California Code of Civil Procedure §377.11 and are authorized to commence this action/proceeding on Edison's behalf pursuant to California Code of Civil Procedure §377.32. Clarissa Simms and Edward Gatlin are authorized to act on Edison's behalf as his successor in interest with respect to his interest in this action and/or proceeding. No other person has a superior right to commence this action or proceeding. Attached hereto as **Exhibit 1**, and incorporated herein by this reference as if set forth in full is a true and correct copy of Plaintiffs' declaration of no other heirs.

10.     At all times relevant to this Complaint, Plaintiff CLARISSA SIMMS ("Clarissa"), was a resident of Oakley, California, Contra Costa County. Clarissa presents her individual claims and also presents survival claims on behalf of her deceased son Edison as his successor in interest.

11.     At all times relevant to this Complaint, Plaintiff EDWARD GATLIN ("Edward"), was a resident of Sacramento, California, Sacramento County. Edward presents his

Case 3:21-cv-00370-SI   Document 1   Filed 01/14/21   Page 5 of 76

individual claims and also presents survival claims on behalf of his deceased son Edison as his successor in interest.

12. At all times applicable herein, Defendant COUNTY OF CONTRA COSTA, also known as CONTRA COSTA COUNTY ("County") was, and is, a public entity. On June 5, 2020 Plaintiffs Clarissa and Edward submitted their governmental claims to County. The Plaintiffs' governmental claims were presented separately including claims for Edward and Clarissa's individual claims, and one on behalf of Decedent Edison. These claims were submitted pursuant to the provisions of California Government Code §§910 et seq. The claims were rejected on July 14, 2020. A portion of the claims were objected to as untimely. Plaintiffs filed their Petition for relief from the requirement of presenting a government claim and the matter was decided on December 2, 2020. There, the superior court denied the Petition "without prejudice to Plaintiffs' right to file a civil action alleging timely presentation of a government claim." A true and correct copy of the Superior Court's order is attached hereto as **Exhibit 2** and incorporated herein by this reference as if set forth in full. The tentative decision of the court was adopted by the court as its final decision on the date of the hearing.

13. At all times applicable herein, CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES ("CFS") was, and is, a subdivision of the County of Contra Costa.

14. At all times applicable herein, CONTRA COSTA COUNTY EMPLOYMENT AND HUMAN SERVICES DEPARTMENT ("EHSD") was, and is, a subdivision of the County of Contra Costa.

15. At all times applicable herein, CONTRA COSTA CHILD PROTECTIVE SERVICES ("CPS") was, and is, a subdivision of the County of Contra Costa.

16. Defendant, Social Worker Supervisor BARBARA CRESPO was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At

COMPLAINT FOR DAMAGES

5

all relevant times alleged herein Defendants Crespo was acting within the course and scope of her duties and was acting under color of law.

17.  Defendant, Social Worker CHRISTY ROLAND was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Roland was acting within the course and scope of her duties and was acting under color of law.

18.  Defendant, Social Worker ALEXANDRIA KOTRAN was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Kotran was acting within the course and scope of her duties and was acting under color of law.

19.  Defendant, Social Worker Supervisor ELEANOR WALKER was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Walker was acting within the course and scope of her duties and was acting under color of law.

20.  Defendant, Social Worker JENNIFER LUND was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Lund was acting within the course and scope of her duties and was acting under color of law.

21.  Defendant, Social Worker KIMBERLY BAKER was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Baker was acting within the course and scope of her duties and was acting under color of law.

22.  Defendant, Social Worker CRAIG THURMOND was an individual residing in

Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Thurmond was acting within the course and scope of his duties and was acting under color of law.

23.    Defendant, Social Worker Supervisor LESLIE DAVIS was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Davis was acting within the course and scope of her duties and was acting under color of law.

24.    Defendant, Social Worker Supervisor MARCY WILLIAMSON was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Williamson was acting within the course and scope of her duties and was acting under color of law.

25.    Defendant, Social Worker KERISSA LYNCH was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Lynch was acting within the course and scope of her duties and was acting under color of law.

26.    Defendant, Social Worker GEORGETTE SHIPE was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Shipe was acting within the course and scope of her duties and was acting under color of law.

27.    Defendant, Social Worker KIMBERLY MILLER was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Miller was acting within the course and scope of

her duties and was acting under color of law.

28. Defendant, Social Worker JAMIE LOPEZ was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of CONTRA COSTA COUNTY and CFS. At all relevant times alleged herein Defendants Lopez was acting within the course and scope of her duties and under color of law.

29. Those Defendants identified herein above in paragraphs 15 through 26 may from time to time be referred to as "Individual County Defendants."

30. Plaintiffs are informed, believe, and thereon allege that Defendant VALLEY-MOUNTAIN REGIONAL CENTER, INC. ("VMRC"), is a California corporation, assisting consumers with developmental disabilities and their families in obtaining services and support from community and government agencies serving San  Joaquin, Stanislaus, Amador, Calaveras and Tuolumne counties with its main office in the City of Stockton, County of San Joaquin, State of California. At all relevant times, Plaintiffs further allege that Defendants VALLEY-MOUNTAIN REGIONAL CENTER, INC., was acting in concert with Defendant County of Contra Costa and/or each of the Individual County Defendants at their behest, under contract and in exchange for money in the provision of traditional government services for the benefit of Edison Gatlin.

31. Defendant, Social Worker JACQUIE PEARSON was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

32. Defendant, Social Worker DANIELLE WELLS was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

33. Defendant, Social Worker CINDY MIX was an individual residing in Contra

Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

34. Defendant, Social Worker TRACY VAUGHN was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

35. Defendant, Social Worker JULIE De DIEGO was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

36. Defendant, Social Worker DANIELLE ESBIT-AYALA was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

37. Defendant, Social Worker RYAN LEE was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

38. Defendant, Social Worker DESIREE CLIFTON was an individual residing in Contra Costa County, and at all times mentioned herein was acting as an officer, agent, and/or employee of VMRC and at all such times was acting within the course and scope of her duties.

39. Plaintiffs are informed, believe, and thereon allege that Defendant ANGEL'S HAVEN 2 RESIDENTIAL CARE was a California corporation, operating as a licensed residential care facility in the City of Stockton, County of San Joaquin, State of California. On information and belief, CONTRA COSTA COUNTY and ANGEL'S HAVEN 2 RESIDENTIAL CARE entered into a contract to provide

child care services to children in the County's custody. At all relevant times, Plaintiffs further allege that Defendants ANGEL'S HAVEN 2 RESIDENTIAL CARE, was acting in concert with Defendant County of Contra Costa and/or each of the Individual County Defendants at their behest, under contract and in exchange for money in the provision of traditional government services for the benefit of Edison Gatlin.

40.   Plaintiffs are informed, believe, and thereon allege that Defendant ANGEL'S HAVEN business form unknown, is operating as a licensed residential care facility in the City of Stockton, County of San Joaquin, State of California.  On information and belief, CONTRA COSTA COUNTY and ANGEL'S HAVEN entered into a contract to provide child care services to children in the County's custody.

41.   Plaintiffs are informed, believe, and thereon allege that Defendant ANGEL'S HAVEN 3 business form unknown, is operating as a licensed residential care facility in the City of Stockton, County of San Joaquin, State of California.  On information and belief, CONTRA COSTA COUNTY and ANGEL'S HAVEN 3 entered into a contract to provide child care services to children in the County's custody. At all relevant times, Plaintiffs further allege that Defendants ANGEL'S HAVEN 3 RESIDENTIAL CARE, was acting in concert with Defendant County of Contra Costa and/or each of the Individual County Defendants at their behest, under contract and in exchange for money in the provision of traditional government services for the benefit of Edison Gatlin.

42.   On information and belief, Defendants ANGEL'S HAVEN RESIDENTIAL CARE, ANGEL'S HAVEN 2 RESIDENTIAL CARE, and ANGEL'S HAVEN 3 RESIDENTIAL CARE are one and the same, or in the alternative are alter egos of each other and shall be collectively referred to herein as either ANGEL'S HAVEN or ANGEL'S HAVEN 2 RESIDENTIAL CARE.

43.   Defendant, ARQUERO GANILYN is a natural person, and at all times mentioned

herein was a caretaker, manager, officer, agent, and/or employee of ANGEL'S HAVEN 2 RESIDENTIAL CARE and at all relevant times was acting within the course and scope of is duties.

44. Defendant, RENALYN ARQUERO is a natural person, and at all times mentioned herein was a caretaker, manager, officer, agent, and/or employee of ANGEL'S HAVEN 2 RESIDENTIAL CARE and at all relevant times was acting within the course and scope of is duties.

45. Defendant, FRANCISCO LLANES, is a natural person, and at all times mentioned herein was a caretaker, officer, agent, and/or employee of ANGEL'S HAVEN 2 RESIDENTIAL CARE and at all relevant times was acting within the course and scope of is duties.

46. Defendant, CHESCKA MENDOZA, is a natural person, and at all times mentioned herein was a caretaker, manager, officer, agent, and/or employee of ANGEL'S HAVEN 2 RESIDENTIAL CARE and at all relevant times was acting within the course and scope of is duties.

47. Defendant, JESSICA PATE, is a natural person, and at all times mentioned herein was a caretaker, manager, officer, agent, and/or employee of ANGEL'S HAVEN 2 RESIDENTIAL CARE and at all relevant times was acting within the course and scope of is duties.

48. Defendant, CECILE CORPUZ LLANES, is a natural person, and at all times mentioned herein was an owner, principal and administrator of ANGEL'S HAVEN 2 RESIDENTIAL CARE and had primary supervisory responsibilities over all of the employees of ANGEL'S HAVE 2 RESIDENTIAL CARE.

49. Defendant, GABRIEL TAURO is a natural person, and at all times mentioned herein was an owner, principal and president of ANGEL'S HAVEN 2 RESIDENTIAL CARE and had primary supervisory responsibilities over all of the employees of ANGEL'S HAVE 2 RESIDENTIAL CARE.

50. Defendant, MARIA CECILIA TAURO is a natural person, and at all times

mentioned herein was an owner, principal and president of ANGEL'S HAVEN 2 RESIDENTIAL CARE and had primary supervisory responsibilities over all of the employees of ANGEL'S HAVE 2 RESIDENTIAL CARE.

51.  Defendant, JEFFERY COLLINS is a natural person, and at all times mentioned herein was a foster parent that operated, managed, and or administered a foster home in Antioch, California.  On information and belief, CONTRA COSTA COUNTY and Defendant, JEFFERY COLLINS entered into a contract to provide child care and social services to children in the County's custody in exchange for money and as such was at all relevant times acting in concert with Contra Costa County in the provision of traditional government services.

52.  Defendant, JENNA-RAY FOSTER FAMILY HOME, is foster care home in Stockton, California.  On information and belief, CONTRA COSTA COUNTY and Defendant, JENNA-RAY FOSTER FAMILY HOME  entered into a contract to provide child care and social services to children in the County's custody in exchange for money and as such was at all relevant times acting in concert with Contra Costa County in the provision of traditional government services.

53.  Defendant, JENNIFER DILLINGHAM is a natural person, and at all times mentioned herein was a foster parent that operated, managed, and or administered a foster home in Stockton, California. On information and belief, CONTRA COSTA COUNTY and Defendant, JENNIFER DILLINGHAM entered into a contract to provide child care and social services to children in the County's custody in exchange for money and as such was at all relevant times acting in concert with Contra Costa County in the provision of traditional government services.

54.  On information and belief Defendants ANGELS HAVEN, ANGELS HAVEN 2 AND ANGELS HAVEN 3 are one and the same and/or are alter-egos of each other.

55.  Defendants DOES 1 through 50 are sued as fictitious names, their true names and

capacities being unknown to Plaintiffs. When ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities. Each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiffs' damages as herein alleged. Each reference in this Complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. Plaintiffs makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

56.   At all relevant times alleged herein, the above identified Defendants, and each of them, including but not limited to Defendants DOES 1 through 50 were acting under color of law.

57.   Whenever this Complaint references any act of the Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

58.   At all times herein mentioned and with respect to the specific matters alleged in this Complaint, each Defendant (including DOES 1 through 50), was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, agent and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full

1   knowledge of said acts.

2   59.  At all times herein, each of the above identified Individual County Defendants were an officer and/or agent of the County of Contra Costa, and was acting under color of law within the course and scope of their respective duties in doing the things and acts herein alleged.

60.  Each of the above Defendants is responsible in some manner for the injuries suffered by the decedent, Edison Gatlin, whether it be by the particular Defendant's act or omission. Plaintiffs reserve their right to amend this complaint to set forth the specific facts and circumstances giving rise to such liability/responsibility at such time as the juvenile record is produced and/or further information becomes available.

## COMMON ALLEGATIONS

61.  Edison Sincere Gatlin was born premature at twenty-five weeks, on August 17, 2005, with one twin sister, who did not survive.  Edison remained in the hospital at the University of California San Francisco Health for several months due to his cerebral palsy, hydrocephalus, chronic lung disease and epilepsy.  During his first few months of life, Edison underwent multiple procedures and had a ventriculoperitoneal shunt placed on October 25, 2005, to relieve pressure on his brain.  Edison was eventually healthy enough and discharged home with Plaintiffs, Clarissa Simms and Edward Gatlin on December 28, 2005.

62.  Plaintiffs, Clarissa and Edward already had one older child, Edward Gatlin Jr. (DOB: 11/6/1999).  On March 9, 2012 Plaintiffs were blessed with twin girls, C.G.1 and C.G.2.

63.  Plaintiffs would often refer to Edison as their miracle baby or mommy's twin. During the time they were together, Plaintiffs were with Edison every day and took care of him. Plaintiffs and their other children loved Edison and their lives were better with Edison in it.

64.  Edison was a happy and healthy child in spite of his disabilities, and he continued

to thrive while in Plaintiffs' care.

65. As Edison grew, Plaintiffs continued to ensure Edison had continued access to necessary medical care, take him to his appointments, and followed Edison's doctor's recommendations.  At one point while Plaintiffs lived in San Mateo County, Plaintiffs missed one or two appointments because of scheduling and San Mateo County Children and Family Services opened a case, but it was unfounded because there was never an issue with Edison's overall health.

66. Plaintiffs, Clarissa and Edward became estranged in 2014. In April 2014, Clarissa moved with all four of her children, including Edison from Sacramento County to Oakley, California for employment. During the transition, Clarissa was caring for four minor children, managing a household, looking for work and transferring all of the children's medi-cal insurance to Contra Costa County. Clarissa did her best in caring for the children. Their home had limited furniture as Clarissa had just moved and was in the process of setting up their new home.

67. Edison was almost nine years old when the family moved to Oakley. Edison was able to eat solid foods, such as a sandwich, with assistance. Edison regularly ate burgers, chicken nuggets, eggs, jello pudding, and had a good appetite. Edison had no new health issues while under Clarissa's care.

68. Edison's seizures were becoming less and less frequent and the duration also became shorter in time up until April/May 2014 when Clarissa did not have insurance to get Edison's anti-seizure medication.  While they lived in Oakley and without his anti-seizure medication. Nonetheless, Edison's condition had improved to the point that even without his regular medication he only suffered approximately 2-5 seizures in the five months they lived there. This was a dramatic decrease in Edison's seizure activity.

69. In mid-September 2014, Clarissa finally receives the medi-cal transfer to Contra Costa County.

70. On Friday, September 19, 2014, Clarissa was contacted by Aladdin Bail Bonds

and told that she needed to come to Sacramento to "sign paperwork" for a pending case. Clarissa informed them that she would be unable to travel to Sacramento at which time they sent agent, Jeremy Gold to Oakley. Little did she know, Mr. Gold came to take Clarissa to Sacramento County Jail for failing to appear at a hearing she did not receive notice of.

71. The Oakley Police Department was contacted and came to Clarissa's home. The Oakley Police Department permitted Clarissa to attempt to get child care for the children, but she was unable to reach anyone within the area.

72. On September 19, 2014 Contra Costa County Children & Family Services Seized Edison and his siblings. Specifically, Defendant Kimberly Baker took physical custody over Edison and his siblings from his mother, Clarissa Simms. On information and belief, in spite of her knowledge of the whereabouts of their father, Defendant Baker made no effort to contact him, and did not release the children to him in spite of his willingness and ability to care for the children.

73. The Contra Costa County Children & Family Services, and each of the Individual County Defendants, filed Juvenile Dependency Petitions for all four minor children while Clarissa was incarcerated. In California, there is no automatic severance of parental rights occasioned simply by the arrest of the parent. Rather, the parent maintains the constitutionally protected right to arrange for the continued custody and care of their child during the term of the parent's incarceration. The parent may exercise these rights unmolested by government absent exigent circumstances or a court order. Clarissa Simms was not given a chance to do so by the Contra Costa County Children & Family Services and each of the remaining Individual County Defendants. As noted above, in spite of their knowledge of the whereabouts of the children's father, the Individual County Defendants, and each of them, made no effort to contact him, and did not release the children to him in spite of his willingness and ability to care for the children, and in spite of Clarissa's repeated requests that Defendants do so.

74.   Late at night on September 19, 2014, Plaintiffs Edward Gatlin spoke with Contra Costa County Children & Family Services department social worker Kimberly Baker and informed her he would like to get all four children back, but he was denied even though there was no evidence whatsoever to suggest that any of the children would be in danger in his care.

75.   As of the time County Defendants seized Edison, he was in good health, uninjured, and generally quite healthy.  All of the other three children were healthy and well-cared for as well.

76.   Nonetheless, Contra Costa County Children & Family Services, including the Individual Social Workers, and each of them, decided to seize Edison and his siblings from Clarissa and Edward's custody and care without obtaining a Court order. At that point in time, it was readily apparent even to a casual observer that all four children were in good health, and were not in any immediate danger of suffering severe bodily injury within the short time it would take to obtain a Court order authorizing their seizure.

77.   As noted above, in California, there is no such thing as a go to jail, lose your kid card. In fact, parents have a fundamental right to make arrangements for the custody and continued care of their children during the term of the parent's incarceration without government interference unless, at the time of the child's seizure by government agents, there is specific and articulable evidence to show that the child is in immediate danger of suffering severe bodily injury or death in the few hours it would take to get a warrant.

78.   Prior to Edison being seized from Clarissa and Edward's custody and care, Edison had spent his entire life living with his mother, Clarissa, and father, Edward. At the time Edison was seized from his parent's custody, Edison was a happy, well-fed and healthy child.

79.   Contra Costa County Children & Family Services, and the Individual County Defendants, and each of them, neither sought or obtained a warrant prior to seizing

Edison and placing him in foster care. Neither Clarissa nor Edward consented to Edison being placed in foster care, and Edisson was incapable of himself giving lawful or valid consent.

80.   Contra Costa County Children & Family Services and the Individual County Defendants, and each of them did not offer, or even bother to explore, any lesser intrusive alternatives of ensuring Edison's safety other than to just seize him. For example, they did not give Clarissa or Edward another opportunity to get child care and instead took Edison and his siblings into foster care immediately and without delay.

81.   At the time of their children's unjustified seizure Clarissa and Edward were presented with paperwork by County Defendants and told to sign the paperwork so they could pick up her children when Clarissa was released from Sacramento jail. Clarissa signed the paperwork based on the information she was provided.  As it turned out, Defendants, and each of them lied to her.

82.   About two weeks after Edison's seizure, Clarissa and Edward contacted Contra Costa County Children & Family Services to obtain information on how to reunify with Edison.  Plaintiffs wanted to know what services were immediately available to them, and what they needed to do to reunify with Edison.

83.   Without any explanation or justification, Contra Costa County Children & Family Services, in their Detention Report wanted Edison in an out of home placement, even though Plaintiffs Edward Gatlin was ready to take care over his children the same night.

84.   Contra Costa County Children & Family Services employees scheduled all visits for Plaintiffs and their policy was "show up or don't see your kids."  Clarissa and Edward were diligent in making their visits and finding out what steps they needed to take to get their children back.

85.   Through conversations and emails with County Defendants, it was apparent that County employees were suspicious of Plaintiffs parental abilities without any basis

and Plaintiffs were already fighting a losing battle with County social workers.

86. Plaintiffs' suggested and requested alternatives to leaving Edison and the other children in foster care, such as family members, but Contra Costa County Children & Family Services employees would not listen.  Plaintiffs family members attended court proceedings to volunteer their homes to the minor children, but were dismissed as County Defendants told Plaintiffs they were going to get their children back and the children didn't need family placement.

87. Contra Costa County Children & Family Services employees voiced only contempt for Clarissa and Edward.  Defendant, Georgette Shipe tells Clarissa and Edward during supervised visits that they will never get Edison back.

88. Plaintiffs wished to reunify with Edison and reunification services were ordered by the Court. Plaintiffs actively participated in those services and completed those services, but when they did Plaintiffs would be assigned a new social worker and would have to prove themselves all over again.

89. In the interim, Defendants Contra Costa County Children & Family Services, told Plaintiffs that until the County felt Plaintiffs had made enough progress the children would need to continue to live outside their care.

90. Eventually Edison's three siblings were returned to Plaintiffs.  But not Edison.  As months turned into years, Plaintiffs did not understand why they could not get Edison back.  County Defendants eventually told Plaintiffs that Plaintiffs could not handle Edison's medical needs and blamed Plaintiffs' other childrens' needs and medical conditions as a reason not to give Edison back.

91. Defendants Contra Costa County Children & Family Services, and each of them, knew that in order to comply with their reunification plan, Plaintiffs would have to participate in regular visitation with Edison.  After all, statistically speaking, visitation is the number one indicator of success in reunification. Instead of facilitating Plaintiffs' visitation, Defendants, and each of them, placed Edison in another county in May 2015 knowing that Plaintiffs were a family with very

limited resources. Plaintiffs was forced to either travel several hours to visit their child or ask for bus tickets.

92. Needless to say, this significant distance and travel time posed foreseeable, obvious, and predictable problems in scheduling regular visits as Plaintiffs were also saddled with the other local (Contra Costa) mandatory services they were required to schedule, actively participate in, and finish in order to reunify with not only Edison, but their other children, who were all spread apart.

93. On September 24, 2014 Edison and his brother, Edward were placed in a foster home with an elderly couple, DOES 1 and 2, in Antioch where Edison's health deteriorates. On information and belief, prior to his placement, the Individual County Defendants, and each of them, made no effort whatsoever to assess the foster home to ensure that DOES 1 and 2 were an appropriate placement for Edison or his brother in spite of the mandatory statutory obligation that Defendants do so. As it turned our, DOES 1 and 2 were not an appropriate placement in that they were utterly incapable of ensuring that Edison's needs were even minimally, let alone adequately met.

94. Immediately upon this initial foster care placement, Edison's weight began to drop dramatically. Based on information and belief, Plaintiffs allege that Edison was not fed or properly cared for by DOS 1 and 2, and/or refused to eat the foods presented to him. DOES 1 and 2, and the Individual County Defendants who were responsible for his care and maintenance while in foster care, quite literally, let him starve. Foster mother DOE 2 did nothing to help or encourage Edison to keep him at a healthy weight. Edward, Edison's brother, tried to feed him, bathe him, and provide him with general comfort and care while they were placed together. But, when he reported to the Individual County Defendants that DOES 1 and 2, were not properly and/or adequately feeding and caring for Edison the Individual County Defendants, and each of them, removed moved Edward from the home and re-placed him in a group home in November 2014 – far away from his brother

Edison. With Edward removed from the scene, no one (who actually cared about Edison) was available to speak up for him or to watch out for him or otherwise ensure he received the care he needed – predictably, his weight and health continued to deteriorate. During this time period, Edison went from 75 pounds to 50 pounds, putting him in the 5th percentile for children his age. He was literally starving to death while DOES 1 and 2 an the Individual County Defendants, and each of them did nothing other than watch his health decay.

95. During visits with Plaintiffs, Edison was seen in the same dirty clothes and without shoes and in generally slovenly condition. It was apparent that he was very skinny, and extremely hungry. When Plaintiffs raised this issue and complained to  the Individual County Defendants, and each of them, the Defendants ignored Plaintiffs' concerns.  Plaintiffs purchased clothing and shoes for Edison and provided them to DOES 1 and 2, but they did not ever see Edison actually wearing the clothes and shoes they provided. Instead they saw the shoes and clothes they had bought for Edison on DOES 1 and 2's grandchildren. For the first time in his life, Edison was not provided even minimally adequate care, by anyone – including DOES 1 and 2 and the Individual County Defendants. His condition continued to deteriorate.

96. On February 2, 2015 for unknown reasons, Edison was taken to the hospital, without notice or consent of his parents and subjected to a shunt revision surgery. On information and belief, this surgery was authorized only by the County and Individual Defendants, and each of them. At no point in time was a Court order authorizing the surgery sought or obtained. Similarly, parental consent was never sought or obtained from Plaintiffs, and Plaintiffs were not permitted to be present at the surgery or even reasonably nearby.

97. By April 24, 2015, Edison was suffering from such severe malnutrition that he required another surgery and had a gastrostomy tube placed to help feed him. As with the prior surgery, on information and belief, this surgery was authorized only

by the County and Individual Defendants, and each of them. At no point in time was a Court order authorizing the surgery sought or obtained. Similarly, parental consent was never sought or obtained from Plaintiffs, and Plaintiffs were not permitted to be present at the surgery or even reasonably nearby.

98. Medical records show that Edison's upper gastrointestinal tract was normal and nothing appeared unusual other than the fact that he was not being fed or cared for. In fact, there is no indication that this particular surgery was even necessary. All that was needed was for someone to help Edison eat, and to feed him on a regular basis.

99. On May 3, 2015, Edison was placed with Foster Parent, Jennifer Dillingham at Jenna-Ray Foster Family Home in Stockton, California.

100. With the gastrostomy tube in place, Edison began gaining weight.

101. Defendant Jennifer Dillingham cared for Edison, there was one other foster child that she cared for, as well as, four of her own children.

102. Plaintiffs cooperated with Jennifer Dillingham for visits and were able to take Edison for overnight visits.  Plaintiffs believed that they were on the way to getting Edison back.

103. On January 15, 2016, Edison Suffers Acute cholecystitis and needs surgery for gallstones.

104. Edison had been suffering from a fever for four days and was treated at San Joaquin General Hospital where doctors diagnosed him with acute cholecystitis.

105. On January 15, 2016, Edison was transferred for specialty care at UCSF Benioff Children's Hospital, where medical staff found he had dried blood in his nose upon arrival. Edison was admitted to UCSF Benioff Children's Hospital from January 15, 2016 through January 24, 2016.

106. During his stay at the hospital, Edison seizures increased.

107. Edison was inappropriately placed with Jenna-Ray Foster Family Home because they did not provide 24 hour care for a medically fragile child. On information and

belief, prior to his placement here, the Individual County Defendants, and each of them, made no effort whatsoever to assess the foster home to ensure that it was an appropriate placement for Edison the mandatory statutory obligation that Defendants do so. As it turned our, this placement was not an appropriate placement in that it was utterly incapable of ensuring that Edison's needs were even minimally, let alone adequately met.

108. Upon information and belief, Edison had nurses during the day, but no supervision during nighttime hours. Admittedly Jennifer Dillingham has used friends to supplement nursing for Edison when she was unavailable.  It is also believed that Edison would be left with Jennifer's four children at various times when Plaintiffs would come to visit and his diaper would be soaked.

109. Upon information and belief, in December 2018, the other foster child cared for by Jennifer Dillingham at Jenna-Ray Foster Family Home died of neglect.  An investigation was initiated while the Individual County Defendants, and each of them, left Edison in Dillingham's "care" in spite of Edison's known fragile condition.

110. On information and belief, Jenna-Ray Foster Family Home was a level 4 facility where staff did not provide care and/or supervision during non-waking hours. However, Edison's individual program plan with VMRC and the Individual County Defendants required one-on-one, 24 hour supervision, which Jennifer Dillingham and Jenna-Ray Foster Family Home did not ever provide. Instead Edison was monitored on a camera at the foot of his bed at night.

111. On information and belief, Edison was sequestered away from others, in his own room where he was left alone unmonitored throughout the day, especially at night. Edison would bang on the walls when left alone in his room. He would be left in his activity chair in his bedroom with a movie on repeat until his feeding time. He would only be checked on at random times throughout the day. Edison had no language skills and lacked safety awareness in familiar and unfamiliar settings, so

he required 24 hour staffing, care, and supervision which included nighttime supervision.

112.   In early 2019, VMRC and the Individual County Defendants, and each of them, knew that placement with Jennifer Dillingham and Jenna-Ray Foster Family Home was an inappropriate placement due to Edisons's lack of supervision. Nonetheless, they  permitted Edison to languish for months in this known inadequate placement. Finally toward the middle of 2019, the Individual County Defendants and VMRC began looking for a different foster placement for Edison that might, hopefully provide Edison the one-on-one, 24 hour care he desperately needed.

113.   On May 7, 2019 Edison was placed at Angel's Haven 2 Residential Care - a facility that County Defendants and VMRC knew did not meet the appropriate level of care necessary for Edison's needs - and kept him there until he died.

114.   In April 2019, Defendant Christy Roland and VMRC researched Angel's Haven 2 Residential Care, and knew that it was not vendored with VMRC and VMRC had no oversight over the staffing requirements to ensure Edison's care and safety.  But VMRC believed that since the facility required at least one staff member in the home at all times, it would suffice. However, similar to Jenna-Ray Foster Family Home, Angel's Haven 2 Residential Care also lacked one-on-one, 24 hour care for Edison.

115.   On information and belief, prior to his placement, neither VMRC or the Individual County Defendants, and each of them, made any effort at all to assess Angels Haven 2 Residential Care to ensure that it was an appropriate placement for Edison in spite of the mandatory statutory obligation that Defendants do so. As it turned out, it was not an appropriate placement in that it was utterly incapable of ensuring that Edison's needs were even minimally let alone adequately met.

116.   On May 7, 2019 Edison was abruptly transferred to Angel's Haven 2 Residential Care and shortly thereafter, County Defendants realized that they could not pay for Edison's care because they were not a vendor with VRMC, something County

Defendants knew before they transferred him.

117.  Based on information and belief, in June 2019 County Defendants decided again to transfer Edison because they could not fund the placement because Defendant Christy Roland did not get approval for the funds to transfer Edison to Angel's Haven 2 Residential Care.  Defendants desire and efforts to transfer Edison was not because he was still receiving the wrong level of care, i.e. one-on-one, 24 hour care, but because of money. Meanwhile, Edison's seizure activity increases to 2-5 times per day.

118.  Upon information and belief, the attempts to transfer Edison went on for months and months between VMRC and the Individual County Defendants searching for a higher level of care facility and one that the County was able to pay for.  Because Edison was a federally eligible child, County Defendants had to move him to a federally eligible placement, which Angel's Haven 2 Residential Care did not meet for Contra Costa County.

119.  In September 2019, Edison's teachers express concern because Edison is sleeping during the day and has not been eating as he normally would.  Edison's seizure activity begins to increase during school as well; which is contrary to what Angel's Haven 2 Residential Care was reporting to VMRC and County Defendants.

120.  Defendant, Eleanor Walker became involved in Edison's transfer and noted that Edison must be moved by November 30, 2019 and knew that the County was in an awkward position because it was the County's responsibility to secure appropriate placement for Edison.

121.  VRMC staff was scheduled to visit and have a face-to-face meeting with Edison on December 5, 2019, but Edison was at school. The quarterly meeting with Defendant Tracy Vaughn of VMRC was rescheduled to December 9, 2019, but it was too late.  Edison Gatlin died on December 8, 2019 due to lack of adequate care and supervision.

122.  Edison Gatlin was found unresponsive on December 8, 2019 by Defendant

Francisco Llanes who was his caretaker at Angel's Haven 2 Residential Care

123.   Edison Gatlin was a medically fragile foster care child that was placed with Angel's Haven 2 Residential Care on May 7, 2019.

124.   Angel's Haven 2 Residential Care was not a vendored facility with VRMC. County Defendants and VRMC knew that the County Defendants' could not pay Angel's Haven 2 Residential Care for Edison's care upon placement with Angel's Haven 2 Residential Care, but they chose to place him there anyway.

125.   Based on information and belief, Angel's Haven 2 Residential Care did not provide for one-on-one care for Edison Gatlin from the time of his placement until the time of his death on December 8, 2019.

126.   Based on information and belief, Angel's Haven 2 Residential Care employee and Defendant, Francisco Llanes saw Edison Gatlin in the evening on December 7, 2019 and Edison was vomiting and it appeared that he did not feel well.  However, Francisco did nothing to help Edison and instead left Edison alone and unattended until 9:30 a.m. the next morning when Francisco Llanes found Edison Gatlin unresponsive on the ground the morning of December 8, 2019.

127.   Edison Gatlin was pronounced dead on December 8, 2019 after attempts to revive him failed.

128.   An autopsy was done by the County of San Joaquin Coroner on Edison Gatlin and the cause of death was klebsiella pneumoniae sepsis and acute bronchopneumonia which generally are infections that could have been controlled and treated with antibiotics.

129.   County employee and Defendant, Jennifer Lund informed the Stockton Police Department that the County investigators on scene believed there was neglect by Angel's Haven 2 Residential Care because the investigator saw an employee of Angel's Haven 2 Residential Care actively changing the medication logs for Edison Gatlin indicating that he was either not receiving enough medication or had received too much medication.  Defendant, Jennifer Lund also believed that

Edison Gatlin was medically fragile and that a large gap in his care could have contributed to his death.

130. Plaintiffs Clarissa Simms and Edward Gatlin, both in their individual capacity and as Edison Gatlin's successors in interest, timely complied with the California Tort Claims Act by filing claims against the County on June 5, 2020 for Defendants' conduct which forms the factual basis for all claims alleged in this complaint. Unknown portions of Plaintiffs' claims were denied on July 20, 2020.

131. Plaintiffs filed applications for late claims on July 29, 2020 and July 30, 2020. Again, unknown portions of the applications for late claims were summarily denied on September 8, 2020.

132. Due to the lack of clarity of the rejections of Plaintiffs Government Claims, Plaintiffs have filed a Petition for Order Permitting Late Claims which has been set for hearing on December 2, 2020.

133. Plaintiffs' complaint herein is now being filed. Thus, Plaintiffs have wholly complied with the California Tort Claims Act. Plaintiffs are thereby allowed to pursue both state law claims and federal constitutional claims as alleged herein.

## FIRST CLAIM FOR RELIEF

### Violations of Constitutional Rights, 42 U.S.C. § 1983

### Unwarranted Seizure and Continued Detention

(By Plaintiffs, in Their Representative Capacity as Successors in Interest of Decedent Edison Gatlin and Against the Individual County Defendants, and DOES 3 - 10)

134. Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if set forth in full.

135. At all relevant times the Individual County Defendants and DOES 3 - 10, and each of them, were acting within the course and scope of their duties as employees and under color of law.

136. At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was so very

"clearly established" that any reasonable social services agent in the Individual County Defendants' (and DOES 3-10) situation would know it is unlawful to seize a child from the care, custody, and control of its parents or to question, threaten the child's parents, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant or other similar court order authorizing the government worker to do so. Furthermore, any such reasonable social worker would also know that to do these things, without a court order, would constitute a violation of the parents' and child's well-elaborated constitutional right to live together without governmental interference – which rights are protected under the First and Fourteenth Amendments to the United States Constitution.

137.    In addition, the law is equally well established that it is unlawful to continue to detain such child from the custody of his parents any longer than is reasonable necessary to ensure the safety of the child in the absence of a Court order authorizing such continued detention.

138.    The Individual County Defendants and DOES 3-10, and each of them, at all times relevant herein, had an affirmative duty and obligation to recognize, acknowledge, and respect Edison's rights, and to conduct themselves in a manner that confirmed, provided for the preservation of, and did not violate the rights guaranteed him under the United States Constitution, including, without limitation, the protection of familial rights, association rights, the right to privacy, family integrity, and the right to familial relations.

139.    These Defendants, and each of them, at all relevant times herein were acting under color of state law when they jointly acted, or knew and agreed and thereby conspired, to violate Edison's constitutional rights by, but not limited to, removing, detaining, and continuing to detain Edison from the care, custody, and control of his parents, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order –

thereby violating Edison's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

140.   As a direct and proximate result of these Defendants' misconduct Edison suffered, general and special damages according to proof at trial, including but not limited to physical and/or mental anxiety, emotional distress, pain and anguish, among other things.

141.   Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct as herein alleged and described, Plaintiffs on behalf of their deceased child, Edison, are entitled to recover, and shall seek, punitive damages against these Defendants, and each of them, in accordance with law and subject to proof at trial.

## SECOND CLAIM FOR RELIEF

### Violations of Constitutional Rights U.S.C. §1983

### Deception in the Presentation of Evidence

(By Plaintiff s, as Successors in Interest to the Decedent Edison Gatlin and Against The Individual County Defendants and DOES 11-20)

142.   Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if set forth in full.

143.   At all times relevant herein, there existed a clearly established due process right of individuals, including but not limited to Edison Gatlin, not to be subjected to false accusations by government officials, including the deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information in court proceedings or in documents submitted with recommendations or requests made to the court. Any reasonable social services agent and/or government agent in these Defendants' situation would know that it is a fundamental due process violation to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory evidence in court reports and other documents filed with the Juvenile Court.

144.  In fact, these Defendants, and each of them, had the affirmative and self-evident duty and obligation to be truthful, honest, accurate, and complete in petitions, reports, and documents submitted and/or presented to the Juvenile Court which had the power to adjudicate substantial rights, including parental rights. These Defendants, and each of them, also had an affirmative obligation and duty to refrain from using improper, unlawful, and deceptive means to obtain judicial orders sustaining and/or adopting social worker recommendations or otherwise seeking to denigrate Edison's well-established liberty interests in familial integrity and continued familial association.

145.  At all relevant times, these Defendants, and each of them, were acting under color of law, and within the course and scope of their official duties when they drafted, created, approved, and/or filed documents with the juvenile court.

146.  On information and belief, these Defendants, and each of them, either singularly or jointly acted and/or agreed to deliberately and/or recklessly present false statements and information, and/or omitted known exculpatory material information when creating their various documents for presentation to the Juvenile Court which had the predictable impact of prolonging Edison's detention from his parents and family, and continuing to delay his ability to obtain essential care and services. This conduct, i.e., Defendants' knowingly deceptive presentation of "evidence" to the Juvenile Court, caused Edison's continued and prolonged detention from his parents and family.

147.  On information and belief, had it not been for these Defendants' deliberate false statements and/or omissions of exculpatory material in the Juvenile Dependence Petition and/or other reports filed in the Juvenile Court, the Juvenile Court would not have adopted Defendants' recommended findings and Edison's continued and prolonged detention would not have occurred.

148.  On information and belief, as a direct and proximate result of these Defendants' misconduct, Edison suffered general and special damages according to proof at

1  trial, including but not limited to, physical manifestations of emotional distress,
2  and/or mental anxiety and anguish, among other things.

3  149.  Due to the malicious, wrongful and despicable nature of the Defendants'
4  misconduct, as herein alleged and described above, Plaintiffs – as Edison's
5  successors in interest, are entitled to recover punitive damages against the
6  Individual County Defendants and DOES 11-20, and each of them, in accordance
7  with law and subject to proof at trial.

**THIRD CLAIM FOR RELIEF**

**Violation of Constitutional Rights U.S.C. 1983**

**Failure to Provide Dependent Minor Continued Safety and Security**

**and Even Minimally-Adequate Care**

(By Plaintiffs as Successors in Interest of Edison Gatlin and against All Defendants)

150.  Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as
if set forth in full.

**COUNT 1:**

151.  At all relevant times alleged herein, Defendants, and each of them, were acting
within the course and scope of their duties as Contra Costa County employees and
under color of law.

152.  Once the state assumes wardship of a child, the state owes the child, as part of that
person's protected liberty interest, reasonable safety and adequate care and
supervision. *Lipscomb by and through DeFehr v. Simmons*, 962 F.2d 1374, 1379
(9th Cir. 1992).  The Constitution's Fourteenth Amendment protects a foster
child's interest in social worker supervision and protection. *Tamas v. Dep't of Soc.
& Health Servs*., 630 F.3d 833, 842-843 (9th Cir. 2010). Thus, once the
government assumes custody and care of a child, it owes that child a duty to
provide reasonable safety and security, and at least minimally-adequate care and
supervision, including but not limited to health care.

153.  Edison Gatlin was a ward of Contra Costa County once he was ordered to continue

to be detained in the County's care, custody, and control and was therefore owed the duties and protections set out above. See, e.g., *Gerrie v. Cty. of San Bernardino*, No. EDCV 19-1435 (JGB) (SPx), 2019 U.S. Dist. LEXIS 228051 (C.D. Cal. Nov. 12, 2019); see also, *Garcia v. Cty. of San Diego*, No. 15-CV-189 JLS (NLS), 2018 U.S. Dist. LEXIS 101718, at *36 (S.D. Cal. June 18, 2018). By virtue of his status as a ward of the County, Edison Gatlin held protected liberty interests in being shielded from harm inflicted in foster care and enjoyed a special relationship with the Count and each of the remaining Defendants who were charged with the duty to provide, or to participate in providing for his care.

154.    At all times applicable herein, said liberty interest and duties of Defendants, and each of them, was so clearly established that any reasonable person similarly-situated would know it was a violation of Edison Gatlin's fundamental rights to fail to provide for his continued safety and security and to fail to provide her with at least minimally-adequate care and supervision, including reasonably adequate health care.

155.    Moreover, Defendants are liable where their actions create or expose an individual to a danger which he or she would not have otherwise faced. *Henry A. v. Willden,* 678 F.3d 991, 1002 (9th Cir. 2012); *Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019).  A foster child's due process rights are violated when a state official exhibits deliberate indifference to a child's serious medical needs. Here, Edison's health continued to decline throughout his time in the County's custody.  Yet, Defendants failed to adequate supervise and monitor Edison's care while in the County's custody. Indeed, through these Defendants' actions and inactions, Edison was placed in greater danger than he otherwise would have faced if left with his parents, or if promptly returned to their care.

156.    In addition, Plaintiffs allege that these Defendants were associated with the implementation of a foster care program designed to place, protect and care for minors subject to the jurisdiction of the Juvenile Court of the County of Contra

Costa. Plaintiff alleges that these Defendants, and each of them regulate and are responsible for the monitoring of foster children placed in the care of the County by the Juvenile Court.  Plaintiff alleges that these Defendants, and each of them, have and had duties to implement policies and programs designed, among other things, to protect the legal and human rights of children receiving services from community care facilities and to ensure that the facilities so established maintain proper licensure or certification and are adequate, safe and sanitary and are equipped to provide at least minimally adequate care and supervision of the children under County care.

157.   During the time Edison Gatlin remained in the care, custody, and control of Defendants, each of the Defendants were deliberately indifferent to Edison Gatlin's obvious and known health care needs. In spite of their legal obligation to meet those needs, Defendants, and each of them, knowingly and with deliberation failed to do so.

158.   Specifically, once Defendants successfully executed Edison Gatlin's removal from the protective care of his parents, where he was thriving, Defendants,  and each of them, acted with a reckless disregard for and deliberate indifference to Edison Gatlin's known rights and needs by failing to provide for and ensure Edison Gatlin's continued safety and security and by failing to provide at least minimally-adequate continued care, including healthcare and supervision for Edison Gatlin, even though they had been notified of his needs on multiple occasions.

159.   Contrary to their obligations to him, Defendants placed and maintained Edison Gatlin in situations where it was reasonably foreseeable that Edison Gatlin would not receive essential mental/behavioral health services needed to address his known needs – and predictably, he did not receive the care, or the level of care, he obviously needed.

160.   As noted above, Edison Gatlin was born severely disabled with epilepsy, cerebral palsy, and serious intellectual disabilities. He was nine years old when he was

seized from his mother by Contra Costa County social services agents on September 19, 2014. The day Edison was taken from his mother, he was well nourished and showed no signs of distress whatsoever.

161. During his dependency and while under the "care" of the Defendants, Edison was bounced from one foster care placement to another – never receiving the level of care and supervision he needed. Finally, on May 7, 2019 Edison was left with Angel's Haven 2 Residential Care, a residential care facility in Stockton, California. He remained there until one night, alone and forgotten, he was left to die.

162. During his time in County custody the Defendants, and each of them, had a legal and moral obligation to supervise Edison's care - that is, to ensure his continued safety and security and to ensure he received at least minimally adequate care and supervision.

163. Unfortunately, Defendants, and each of them, failed to meet their legal and moral obligations, and by December 8, 2019, Edison Gatlin was found face down on the floor, dead. Edison was only 14 years old. These Defendants, and the County of Contra Costa quite literally ignored Edison to death.

164. Defendants, in spite of their knowledge of Edison's declining condition, maintained Edison Gatlin in inappropriate and inadequate placements for a prolonged period of time knowing that he was not receiving necessary or appropriate health services and/or supervision to address his substantial healthcare needs.

165. These Defendants, and each of them, knew or with the exercise of reasonable care should have known, that Edison Gatlin presented with a high risk of foreseeably suffering serious health complications, and even death, if not provided with appropriate care supervision and treatment. Despite this, these Defendants, and each of them: (1) failed to reasonably and/or adequately investigate allegations that Edison was mistreated or inadequately cared for in his various placements, (2)

ignored and failed to inform the court of Edison's declining condition, (3) allowed Edison Gatlin to remain in inadequate and inappropriate care without needed and essential healthcare and supervision, and, (4) failed to take steps to ensure that Edison actually did receive the care and supervision he required to even survive.

166. As a direct and proximate result of Defendants' acts and omissions, Edison Gatlin suffered injuries as alleged herein, including but not limited to injuries to his person, which injuries include pain, humiliation, anxiety, mental anguish, emotional distress, up to and including he death, face down on the floor and alone – and other general and special damages in an amount to be ascertained according to proof at trial.

167. Due to the malicious and knowing violation of Edison Gatlin's rights and/or the wanton disregard of his rights, and the wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described above, Plaintiffs as Edison's successors in interest, hereby demand and are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

## COUNT 2:

168. On information and belief, the County and Defendants ANGEL'S HAVEN 2 RESIDENTIAL CARE, Jenna-Ray Foster Family Home, JENNIFER DILLINGHAM, VALLEY-MOUNTAIN REGIONAL CENTER, INC and DOES 1-2 entered into a contract to provide child care and social services to children in the County's custody. On information and belief, the County and each of these Defendants collaborate to provide child care and social services to children in the County's custody as well as other traditional government services. On information and belief, at all relevant times, these Defendants' agents and employees operated pursuant to Defendants respective child care contracts.

169. These Defendants, and each of them, jointly and willfully collaborated with the Contra Costa County to provide child care and social services to Edison.

170. Pursuant to contract, these Defendants' agents and employees assumed custody and care of Edison. These Defendants' agents and employees enjoyed a special relationship with Edison such that their employees, who are also identified herein as Defendants were charged with the affirmative obligation, that is, the duty to ensure Edison's safety and protection, and provide him with minimally adequate care, including healthcare and supervision.

171. These Defendants, including their employees who are also identified hereinabove as Defendants knew that Edison was prone to infection and other maladies if left unsupervised. It was also reasonably foreseeable that left untreated or inadequately treated, Edison's condition  would continue to degrade and decay such that his health could become seriously impaired and that he could even die.

172. These Defendants, including their employees who are also identified hereinabove as Defendants knew that Edison required a higher level of care to protect his safety and well being, and to address his serious health issues.

173. These Defendants, including their employees who are also identified hereinabove as Defendants, and each of them, refused and/or failed to supervise Edison, implement or set up safeguards to protect Edison, provide minimally adequate care, and/or ensure that Edison recieved adequate supervision and health care.

174. These Defendants, including their employees who are also identified hereinabove as Defendants maintained Edison in inappropriate and inadequate placements for a prolonged period of time knowing that he was not receiving necessary or appropriate health services and/or supervision to address his serious and substantial healthcare needs.

175. Edison's health would not decayed to the extent that it did if these Defendants, including their employees who are also identified hereinabove as Defendants and each of them, had provided adequate protection, supervision, and safety.

176. These Defendants conduct, including that of their employees who are also identified hereinabove as Defendants, was a substantial factor in causing Edison to

suffer serious harm, including death. As a direct and proximate result of these Defendants condut, including their employees who are also identified hereinabove as Defendants, Edison's constitutional rights were violated; and, he suffered damages thereby, as according to proof at trial.

177.  These Defendants conduct, including that of their employees who are also identified hereinabove as Defendants, as herein alleged was intentional and/or undertaken with a conscious disregard for Edison's rights. As a result of this misconduct, Plaintiffs, as Edison's successors in interest, are entitled to recover punitive damages against each of these defendants for the role they played.

## FOURTH CLAIM FOR RELIEF

### *Monell*-Related Claims

(By Plaintiffs as Successors in Interest of Edison Gatlin

and Against Defendants Contra Costa County, Angel's Haven 2 Residential Care

Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC.,

and DOES 20 through 30, inclusive)

178.  Plaintiff hereby incorporates by reference all other paragraphs of  this Complaint as if set forth in full.

## COUNT 1:

179.  Defendant Contra Costa County, including through its child welfare services agency is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability under *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

180.  Defendant Contra Costa County, including through its entity DCFS and those individuals in their official capacities who had supervisory and/or policy making authority, had a duty to Edison Gatlin at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed

under the United States Constitution, including those under the Fourth and Fourteenth Amendments to the United States Constitution, to include without limitation, liberty interests in reasonable safety and minimally-adequate care, and the right to substantive and procedural due process which includes the right to remain free of unwarranted seizures and the right to remain free of false accusations in court proceedings.

181. Said Defendant also had a duty to use reasonable care, including through the promulgation and implementation of procedures, policies and training, to ensure that their agents did not alienate Edison from his parents, did not wrongfully and without just cause removal of Edison from the custody of his parents, did not misrepresent facts to the court. Moreover, said Defendant also had a duty to use reasonable care, including through the promulgation and implementation of procedures, policies and training, to ensure that their agents to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within its child welfare agencies, so as to protect the constitutional rights of persons with whom its agents regularly come into contact, including Edison, in order to avoid violation of those persons' constitutional rights.

182. Defendant Contra Costa County, including through its child welfare agency, established and/or followed procedures, customs, and/or practices which were the moving force behind the violations of Plaintiff's and Edison's constitutional rights, including those under the Fourth and Fourteenth Amendment, by, but not limited to:

      a.    the custom and/or practice of failing to properly investigate allegations of neglect or abuse before detaining minors from the custody of their parents;

      b.    the custom and/or practice of utilizing coercion and intimidation to

induce parents to sign so-called "safety plans" relinquishing control of their children, as a workaround to the Constitution's warrant requirements in order to expeditiously seize children;

c.      the custom and/or practice of maintaining foster children in placement in community care facilities known or suspected to be inadequate to the needs of dependents of the court, including the needs of minors with special needs such as the need to address diagnosed health conditions;

d.      the custom and/or practice of presenting false or incomplete information to the court to accomplish and effectuate the continued detention of minors from the custody of their parents when there is no true and legitimate basis to do so;

e.      the custom and/or practice of failing to provide even minimally-adequate care, including health care to children in county custody who have severe mental health needs such as those of Edison here;

f.      by acting with deliberate indifference in implementing a practice of inadequate training and/or supervision and/or by failing to train and/or supervise its officers, agents and employees, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the placement of foster children and the investigation and reporting of child neglect and abuse, and the provision of reasonably-adequate care, including but not limited to health care. This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend

this pleading as more information becomes available.

183. Defendant Contra Costa County, including by and through its child welfare agency and its policymaking officials, breached its duties and obligations to Plaintiff and to Edison by, but not limited to, deliberately and indifferently failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Defendants, and each of them, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected foster children and their parents, including Plaintiffs and Edison Gatlin herein.

184. Defendant Contra Costa County knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Edison to be injured and damaged by Contra Costa County's wrongful policies, or deliberate lack thereof, and was deliberately indifferent to the risk of such injury or harm. The aforementioned breaches and failures of Contra Costa County occurred in contravention of public policy and their legal duties and obligations to Edison.

185. The above actions and/or inactions, namely the customs, practices, and/or procedures of Defendant Contra Costa County, were the moving force behind, and direct and proximate cause of Edison's injuries, as alleged herein.  As a result, Edison has sustained general and special damages – including death, to an extent and in an amount to be proven at trial.

## COUNT 2:

186. The above listed constitutional mandates apply equally to government and to those private persons who are willful or voluntary participants with the government in providing child care and social services. See, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

187. On information and belief, the County and Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive entered into one or more contracts for Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive to provide child care and social services on the County's behalf. On information and belief, the County pays Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive money to provide these services. On information and belief, at all relevant times, Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive operated pursuant to this child care and social services agreement.

188. On information and belief, pursuant to this contract, Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive accepted full responsibility for the acts or omissions of its agents, subcontractors, foster care providers, and/or of persons either directly or indirectly employed by Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive.

189. The County and Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive entered into a contract for Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive. to specifically provide child care and social services to Edison. The County paid Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive. for Edison's care – including

supervision and social services. At all relevant times, Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive operated pursuant to this child care and social services agreement.

190. Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive and their respective employees who are also named as Defendants in this lawsuit, voluntarily and willfully collaborated with Contra Costa County to provide supervision and child care and social services to Edison.

191. Based on the duties charged to Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive and their respective agents and/or employees, Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive's policymaking officials knew or should have known of the need to establish such customs, policies, and practices as were required to protect the aforementioned constitutional rights of children with whom the Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive and their respective agents and/or employees regularly came into contact – and to adequately train their workers, employees, and/or agents.

192. At the time of the underlying events, the regularly established policies, customs, and/or practices of the Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive, that were followed, adhered to, complied with, and carried out by their employees, agents, and contractors, were the moving force that caused the violations of the constitutional rights of Plaintiff, including but not limited to the following:

a.      the custom and/or practice of failing to provide even minimally-adequate supervision and/or care, including health care to children in county custody who have severe healthcare needs such as those of Edison here;

b.      the custom and/or practice of not providing sufficient supervision or adequate care to a child that is in need of substantial 24/7 supervision and one-on-one care.

c.      by acting with deliberate indifference in implementing a practice of inadequate training and/or supervision and/or by failing to train and/or supervise its officers, agents and employees, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the care and supervision of foster children, and the provision of reasonably-adequate supervision care to special needs children, including but not limited to health care. This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.

193.    When Defendants, and each of them, failed to protect Edison from harm and failed to provide reasonable safety and minimally adequate supervision and care, they were acting pursuant to and in accordance with Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive's customs and practices.

194.    Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30, inclusive never investigated or disciplined any of their employees who are also Defendants in this action, for failing to supervise Edison and/or him from harm

1    and/or for failing to provide reasonable safety and minimally adequate care.

2    195. On information and belief, Angel's Haven 2 Residential Care Jenna-Ray Foster

3    Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES

4    20 through 30, inclusive habitually do not discipline their agents and/or employees

5    for constitutional violations or failure to protect and/or supervise foster children.

6    196. On information and belief, Angel's Haven 2 Residential Care Jenna-Ray Foster

7    Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES

8    20 through 30, inclusive considered and examined their respective employees'

9    acts/omissions and other conduct involving Edison, and ratified and/or approved

10   such acts/omissions and/or conduct.

11   197. Angel's Haven 2 Residential Care Jenna-Ray Foster Family Home,

12   VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 20 through 30,

13   inclusive's customs, practices, policies, and/or failure to train their employees

14   and/or agents on these established constitutional rights was a substantial factor in

15   causing Edison's harm. Without adequate training, Defendants' respective

16   employees who regularly dealt with Edison, were unfamiliar with and oblivious to

17   Edison's rights and needs. As a result, Edison has sustained general and special

18   damages, to an extent and in an amount to be proven separately at trial, including

19   his death.

20                           **FIFTH CLAIM FOR RELIEF**

21                       **For Wrongful Death - CCP §377.60**

22                    (By Plaintiffs and Against All Defendants)

23   198. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as

24   if set forth in full.

25   199. Edison was a dependent of the Contra Costa County Juvenile Court from

26   September 19, 2014 until the time of his death.  At that time, Edison was in the

27   custody, supervision, care and control of the Contra Costa County Children &

28   Family Services for the purpose of providing care, supervision and control of the

minor's health, welfare, safety, and care. At such time, the rights, duties, and responsibilities of Plaintiffs Clarissa Simms and Edward Gatlin were suspended, and such duties and obligations were fully assumed by the Contra Costa County Children & Family Services and its social workers. Thus, the County and each of the individual Defendants assumed mandatory statutory duties arising under state law, to provide for the continued safety and security of the child and to provide at least minimally adequate care, including timely healthcare.

200. Plaintiffs detrimentally relied upon the Contra Costa County Children & Family Services to provide for his care, health, welfare, safety and well-being, and for the supervision provided to Edison. Plaintiffs further detrimentally relied upon the acts or omissions of all Defendants including DOES 1-50, to fulfill their duties, which included the duty and responsibility (1) to supervise the foster care, and (2) to supervise foster children CFS placed.

201. Defendants' activities and responsibilities, and Plaintiffs' detrimental reliance thereon, and Edison being in the County's custody and care, a special relationship was established between Plaintiffs and each of the Defendants including DOES 1-50.  As a result of the special relationship, each of the Defendants had an affirmative duty to supervise Edison and a duty to come to Edison's aid and to prevent neglect, abuse, and/or mistreatment, and to provide him with at least minimally adequate care and supervision.

202. The acts and/or omissions of Defendants, and each of them, including but not limited to improperly placing Edison into foster care that was not well suited for Edison's medically fragile needs which created a substantial and foreseeable risk to Edison of serious harm.

203. During the period of time that Edison was in the County's jurisdiction, custody, and control, his health began to decline, and, as Defendants had failed to provide the required monitoring, services, nursing, as well as, adequate supervision and monitoring, Edison died.

204.   The Defendants and DOES 1-50, and each of them, knew or with the exercise of reasonable care should have known, or reasonably should have known, that Edison was unable to care for himself due to his various health issues and would require adequate monitoring and/or supervision, as well as medical and/or health services to ensure his health and/or safety, and, in the proper exercise of their respective duties and responsibilities, Defendants would have obtained such knowledge. However, Defendants and DOES 1-50, and each of them, failed and neglected to properly exercise their respective duties and responsibilities and therefore did not take action to prevent or stop Edison's harm, and/or to adequately supervise and/or monitor Edison's placement in foster care.  Instead, the Defendants and DOES 1-50, allowed Edison to stay and remain in foster care despite the fact that Edison did not have the necessary health and/or medical services to ensure his continued health, safety, and security.  Due to these failures, Edison died.

205.   The Defendants and DOES 1-50, and each of them, knew, or with the exercise of reasonable care should have known, that Edison was a vulnerable minor due to his various health issues required adequate and continuous supervision, monitoring, and health services.  Despite this, the County Defendants and DOES 1-50: (1) failed to reasonably and/or adequately place Edison with an appropriate caregiver, (2) failed to adequately supervise Edison after placing him in foster care, (3) allowed Edison to remain in foster care even after his health showed symptoms of declining, (4) failed to provide necessary medical services and nursing care for Edison, over the course of several years and/or (5) failed to keep Plaintiffs and the Juvenile Court apprised of Edison's condition while in placement.  This conduct, or rather misconduct, was a substantial factor is causing Edison's wrongful death while in the County's "care."

206.   As a direct and indirect result of the acts and omissions of Defendants, and each of them, as herein alleged, Edison Gatlin sustained severe and serious injuries resulting in his death as alleged herein above.

207.   As a direct and legal result of the conduct of the Defendants, and each of them, and of the death of Edison Gatlin, Plaintiffs have suffered both special and general damages, including but not limited to funeral and burial expenses and loss of the society, companionship, comfort and support of their son Edison Gatlin, in an amount to be shown according to proof at trial.

## SIXTH CLAIM FOR RELIEF

### For Breach of Mandatory Duties

(By Plaintiffs Individually and as Successors in interest of Edison Gatlin and Against All Government Defendants)

208.   Plaintiff hereby refers to, incorporates by reference, and realleges all other paragraphs of this Complaint as if set forth in full.

209.   Plaintiffs allege on information and belief that on and prior to Edison's death, Defendants Contra Costa County and the Individual County Defendants and Does 3 through 10, and each of them, continuously violated mandatory duties including, but not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code §16501 and as set forth in the Contra Costa Department of Children and Family Services Handbook. Plaintiffs allege that specific statutes, regulations and policies violated by Defendants include, but are not limited to, those requiring intake and investigation as set forth in Regulation 31-125 and the requirement to make necessary collateral contacts with each person having knowledge of the condition of each child that is the subject of an allegation. Defendants, and each of them, violated Regulation 31-135 by not ensuring authority to remove Edison. Defendants further violated Regulation 31-135 by not making and/or documenting pre-placement preventative efforts to avoid detention. Defendants violated Regulation 31-137 by failing to provide needed transitional medical and health treatment and adequate supervision to Edison. Defendants violated Regulation 31-201 through failure to complete an

adequate assessment of Edison's needs and failing to develop an appropriate case plan to address Edison's needs and by failing to implement even the inadequate case plan that was eventually developed. Defendants failed to gather and evaluate information relevant to the case situation to appraise case services needs. Defendants failed to inform Edison's parents of authorized visitation and failed to facilitate visitation with Edison's parents. Defendants violated Regulation 31-205 by failing to properly document an assessment of Edison and/or conduct such an assessment. Defendants violated Regulation 31-206 by failing to properly document a case plan for Edison. Defendants violated Regulations 31- 210 and/or 31-215 by failing to comply with the case plan time frames and administrative requirements and failed to complete a case plan within 30 calendar days of Edison's removal as required. Defendants violated Regulations 31-225 and/or 31-230 by failing to update case plan documentation. Defendants violated Regulation 31-310 by failing to monitor Edison's medical needs, care and supervision as well as his condition and by failing to provide services appropriate to meet those needs and by failing to assist Edison's parents to understand agency procedures and orders of the court. Defendants violated Regulation 31-315 by failing to maintain continuity of mental health care for Edison despite actual knowledge of his severe, substantial, and serious healthcare needs. Defendants violated Regulation 31-320 by not complying with the social worker contact requirements with Edison. Defendants violated Regulation 31-325 by not complying with the social worker contact requirements with Edison's parents. Defendants violated Regulation 31-330 by not complying with the social worker contact requirements with the out-of-home care providers. Defendants violated Regulation 31-335 by failing to comply with the social worker contact requirements with other service providers.

210. In addition to all of the foregoing, Defendants' placement of Edison in facilities inadequately trained and not capable of meeting his needs and providing an

1   environment suitable and appropriate to meet Edison's needs violates Regulations

2   31-401 through 31-445 of the CDSS Manual of Policies and Procedures by failing

3   to fulfill the social worker responsibilities for placement.

4   211.   Other statutes, regulations and policies violated include those set forth in Section 4

5   of the CFS Handbook pertaining to assessment and placement coordination to

6   ensure the safety and well-being of Edison, California Penal Code §§11166, et

7   seq. by failing to report known and/or suspected neglect and/or abuse of Edison,

8   Regulations 31-320 and 31-330 of the CDSS Manual of Policies and Procedures

9   by failing to adequately conduct face-to-face contacts with Edison and his various

10   caregivers, Regulation 31-405 of the CDSS Manual of Policies and Procedures by

11   failing to fulfill the social worker responsibilities for placement, Regulation

12   31-420 of the CDSS Manual of Policies and Procedures by failing to adhere to

13   placement responsibilities set forth therein, and Regulation 31-501 of the CDSS

14   Manual of Policies and Procedures by failing to report and/or properly investigate

15   reports of abuse or neglect of Edison.

16   212.   In addition to the foregoing, Plaintiffs are informed and believe that Defendants,

17   and each of them failed to specifically adhere to the following additional

18   mandatory statutory duties:

19         a.      Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405,

20         31-420, and 31-445, by failing to fulfill a social worker's responsibilities for

21         placement.

22

23         b.      Cal. Welf. & Inst. Code, §361.3 and CDSS MPP Regulations

24         31-405.12, by failing to give preferential consideration for placement of the

25         child to an adult who is a grandparent, aunt, uncle or sibling of the child.

26

27         c.      CDSS MPP Regulations 31-320 and 31-330, by failing to adequately

28         conduct face-to face contacts with Edison.

COMPLAINT FOR DAMAGES

49

d.      CDSS MPP Regulations 31-501, by failing to report and/or investigate reports of neglect and/or abuse of Edison.

e.      Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-137 and 31-505, by failing to provide adequate supervision, adequate services, and continued case plan updates for an out-of-county placement.

f.      CDSS MPP Regulations 31-310, 31-445(i), and 31-405.22, by failing to monitor Edison's physical and emotional condition, and failing to take necessary actions to safeguard Edison's growth and development while in foster care placement.

g.      Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405, 31-420, and 31-445, by failing to fulfill a social worker's responsibilities for placement.

h.      Cal. Welf. & Inst. Code, §16501.1 and CDSS MPP Regulations 31-137 and 31-505, by failing to provide adequate supervision, adequate services, and continued case plan updates for an out-of-county placement.

i.      Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-301, by failing to provide services consistent with the case plan goals.

j.      CDSS MPP Regulation 31-325, by failing to regularly update Plaintiffs as to Edison's status while in placement.

k.      CDSS MPP Regulations 31-340(2), by failing to arrange for visits between child and the parent(s)/guardian(s) named in the case plan no less

1    frequently than once each calendar month for children receiving family
2    reunification services.

3

4         l.      CDSS MPP Regulations 31-410.7-.76, by failing to consider the ease
5                 of accessibility for visitation and the appropriateness of the placement when
6                 placing Edison in an out-of-county daycare facility.

7    213.   Contra Costs County, the Individual County Defendants and DOES 1-50, breached
8           their mandatory duties, as set forth above, from September 19, 2014 through
9           December 8, 2019, in that Defendants were required to meet certain pre-placement
10          evaluation and approval duties, as well as providing adequate services to allow
11          Plaintiffs Clarissa and Edward to reunify with Edison and avoiding unfairly
12          obstructing Plaintiffs ability to pursue those services and refrained from doing so.

13   214.   Plaintiffs allege that Defendants Contra Costa County, the Individual County
14          Defendants and Does 3 through 10, continuously breached their mandatory duties
15          as set forth in the preceding paragraphs, during the entire time Edison was in
16          Contra Costa County's custody through and including the date of his death, and
17          also during the period of time when Defendants were required to meet certain
18          pre-placement evaluation and licensing duties.

19   215.   Plaintiff alleges that had Defendants Contra Costa County, the Individual County
20          Defendants and Does 1 through 10 not breached their mandatory duties, they
21          would have been required to act upon evidence of the inappropriateness of
22          Edison's various placements in a timely manner and would have been obligated to
23          take measures to protect Edison and to provide him with services necessary to
24          properly treat his severe disabilities and medical needs including the provision of
25          24/7 supervision services.. As a proximate result of Defendants' failure to fulfill
26          their mandatory duties, Edison suffered neglect, abuse and/or mistreatment
27          beginning on the date he was first take from his parents and continuing through
28          the date of his death, all of which ultimately caused or contributed to Edison

suffering fatal injuries.  Plaintiffs individually also suffered special and general damages as a result of the continuous acts and omissions of Defendants which ultimately caused or substantially contributed to the death of Edison Gatlin.

216.  As a direct result of the acts and omissions of Defendants, Plaintiffs and Edison sustained general and special damages in amounts within the jurisdictional limits of this court according to proof at trial.

## SEVENTH CLAIM FOR RELIEF

### For Breach of Duties Imposed Under Special Relationship

(By Plaintiffs both individually and as Successor in interest of Edison Gatlin and Against All Defendants)

217.  Plaintiff hereby refers to, incorporates by reference, and realleges all other paragraphs of this Complaint as if set forth in full.

218.  A special relationship was established between Defendants and Edison and similarly-situated minors, under which Defendants, and each of them, owed Edison and similarly-situated minors a duty of due care and a duty to protect Edison from foreseeable harm.

219.  Contra Costa County has primary jurisdiction and control of the Contra Costa County CFS foster care system including, but not limited to, individuals and facilities established, regulated, licensed, and controlled under the Community Care Facilities Act. Defendants Contra Costa County and Does 1 through 10, inclusive, have primary jurisdiction over the placement, protection and care of juveniles in the custody of Contra Costa County while they are in foster care.

220.  Plaintiff alleges that Defendants Contra Costa County and Does 1 through 10 maintain primary jurisdiction, control, and responsibility for the health, safety, protection, and well-being of juveniles while they are in custody, which is co-existent with the entities and individuals to which it delegates authority, including group homes and other community care facilities.

221.  Defendant Contra Costa County has the primary jurisdiction and a continuing

responsibility to investigate the background, history and qualifications of all persons who provide foster care, or who own, operate, or are employed by community care facilities, to insure the health, safety, well-being and protection of minors placed into foster care. Plaintiff and Edison reasonably relied on Defendant Contra Costa County to perform its continuing duty to ensure the qualifications of persons and agencies providing care and the ability of those persons and agencies to meet the needs of the minors placed with them.

222.   Edison was a detained minor of the San Bernardino Juvenile Court and was in the custody, supervision, care and control of Defendant Contra Costa County for the purpose of providing care, supervision and control of the minor's health, welfare, safety and care. At the time he was detained the rights, duties and responsibilities of Edison's parents or guardians were suspended, and such duties and obligations were assumed by Contra Costa County, and such individuals or entities to whom it delegated such duties.  Plaintiff therefore relied upon Contra Costa County to perform its oversight, quality of care inspections, and other duties, and upon the DCFS and/or private foster care providers and agencies with whom it contracts, to provide such supervision and control over his health, welfare, safety and care. As a result a special relationship was thereby established between Defendants and both Plaintiff and Decedent.

223.   Defendants, and each of them, knew or should have known that the medical and other needs of Edison exceeded the ability to meet those needs of the providers and facilities in which he was placed. It was foreseeable that Edison would be damaged as a result.

224.   Despite this continuing constructive and actual notice of the needs of Edison and the inappropriateness and inadequacy of the services and placements provided, Defendant Contra Costa County allowed the inappropriate placements and inadequate services to be maintained and continued.

225.   Despite the existence of the special relationships between Defendants, Plaintiff

and Decedent, and each of them, Defendants breached their respective duties of due care under the special relationship while in the scope of their agency or employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for and protect the health, safety and well-being of Edison and other minors in custody while in the care of facilities subject to Contra Costa County's jurisdiction and control.

226. Government Code §820 provides that an employee of a public entity is liable for his or her acts or omissions to the same extent as a private person, and under Government Code §815.2 the public entity that employs the individual is vicariously liable for the torts of its employee committed in the scope of employment.

227. As a proximate result of the breach of duty of due care under the respective special relationships created and existing between Defendants, Plaintiff and Decedent, Plaintiff individually and Decedent suffered injuries and damages as alleged herein. Edison suffered neglect and mistreatment, which was reasonably obvious and foreseeable and could, should, and/or would have been discovered in the exercise of due care including, but not limited to, by investigating reports of mental health professionals, by communicating with mental health professionals, by adhering to Contra Costa County Katie A. procedures and policies, by conducting in-person interviews and by other established methods and procedures for the supervision, care and oversight of dependent minors while in foster care.

228. Plaintiffs allege that Defendants, and each of them, failed and neglected to establish and implement policies and procedures to ensure the health, safety and well-being of Edison and other minors, including, but not limited to, the failure to develop and institute policies and procedures for conducting periodic examinations, in-person interviews, and other methods designed to discover and prevent physical, psychological and unlawful physical and/or psychological abuse, neglect and mistreatment of minors in custody, including Edison. Had Defendants,

and each of them, not breached their respective duties of due care under their special relationships, they could, should, or would have discovered evidence of neglect and mistreatment of Edison, or of the unfitness of her service providers to accommodate her mental health condition and needs and taken measures to protect Edison from foreseeable harm.

229.   As a proximate result of the acts and omissions of Defendants, and each of them, Plaintiff and Decedent sustained general and special damages as alleged herein, in amounts within the jurisdictional limits of this court according to proof at trial.

## EIGHTH CLAIM FOR RELIEF

### Negligence

(By Plaintiffs both individually and as Successors in interest of Edison Gatlin and against all Defendants)

230.   Plaintiff hereby refers to, incorporates by reference, and realleges all other paragraphs of this Complaint as if set forth in full.

231.   At all relevant times, Defendants, and each of them, were acting within the course and scope of their duties.

232.   At all relevant times, Defendants, and each of them, owed statutory, regulatory, and generally accepted duties of care to Edison. Namely, Defendants, and each of them, had a duty to watch after and/or care for Edison, and ensure his safety while charged with his care and/or supervision.

233.   Pursuant to contract with Contra Costa County, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 assumed custody and care of Edison and as such owed him a special duty of care.

234.   Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 knew, or with the exercise

of reasonable care should have known, that Edison was prone injury and required special attention and care to feed, bathe and supervision.

235. Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 refused and/or failed to supervise Edison, implement or set up safeguards to protect Edison, provide minimally adequate care, and/or supervision to ensure that Edison was well taken care of and that his medical needs were met.

236. Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 did not provide Edison even minimally adequate supervision, care, safety and security.

237. Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 breached their respective duties of care to Edison.

238. Edison's heath and welfare predictably declined and continued to decline until his death as a result of Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50's lack of attention to his needs and general breach of their obligations to care for him.

239. As a direct and proximate result of Defendants Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50 breach of their duties to Edison, he sustained physical injuries, to an extent and in an amount subject to proof at trial. Edison also sustained

psychological, mental, and/or emotional injuries, to an extent and in an amount subject to proof at trial.

240. Contra Costa County, the Individual County Workers, Angel's Haven 2 Residential Care, Jenna-Ray Foster Family Home, VALLEY-MOUNTAIN REGIONAL CENTER, INC., and DOES 1 through 50's acts and/or omissions were a substantial factor in causing harm to Edison and to Plaintiffs.

241. Defendants, and each of them, are vicariously responsible for the conduct of each of the remaining Defendants under Government Code Section 815.2 and/or other applicable law.

## NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiffs both individually and as successors in interest of Edison Gatlin against all Defendants)

242. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

243. The conduct of these Defendants, and each of them, was extreme and outrageous in that they abused their position of authority and their relationship with Plaintiffs and Edison. The relationship between Clarissa, Edward, and Edison and the Defendants, and each of them, was such that the Defendants, and each of them had real, or apparent, power to affect all of Plaintiff's and Edison's interests.

244. At all relevant times after Edison's removal from his parent's and his repose in the custody of Contra Costa County, Defendants, and each of them, subjectively knew that Edison, and Plaintiffs were particularly vulnerable to emotional distress. Moreover, Defendants, and each of them, knew that their conduct would likely result in physical and/or emotional harm due to mental distress, among other things.

245. Plaintiffs and Edison, up until the moment of Edison's death and after, suffered the severe and obvious emotional distress that results from the mistreatment suffered by Edison as well as the emotional distress one might be expected to suffer as a result of the death of one's child under the circumstances presented here. To this day, Plaintiffs require counseling and treatment to even cope with this tragic loss.

246. Defendants' conduct in failing to adequately monitor and supervise Edison while he was in the County's care was extreme and outrageous. Defendants placed Edison in foster care where they failed to provide to provide necessary health services to ensure Edison's basic survival. As Edison was unable to care for himself, Defendants' multiple repeated and knowing failures and led, inevitably, to his decline in health and death.

247. Defendants, as part of their duties and responsibilities, knew, or reasonably should have known, that adequate services, monitoring, and supervision were absolutely essential.

248. Defendants, and each of them, acted with reckless disregard of the probability that Plaintiffs, including Edison, would suffer emotional distress in that they gave little or no thought to the probable effects of their conduct; and, as a direct and proximate result of Defendants' conduct, Plaintiffs, including Edison, did suffer severe emotional distress.  The conduct of Defendants, and each of them was a substantial factor in causing the severe emotional distress suffered by Plaintiffs and Edison up until the moment of his death.

249. County Defendant are liable for all injuries proximately caused by an act or omission of the individual Defendants, who at all relevant times were acting within the course and scope of their duties as employees of County.  Thus, County is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of the remaining Defendants in an amount according to proof at trial.

250.  As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish.

251.  The acts and omissions of the individual and non-governmental Defendants, and each of them, as herein alleged were intentional and/or done with a conscious disregard for Plaintiffs' and Edison's rights. Because the non-governmental Defendants acted with a wanton and reckless disregard of Plaintiffs' and Edison's obvious and known rights, Plaintiffs are entitled to recover punitive damages against these Defendants as according to proof at trial. Plaintiffs expressly make no claim for punitive damages against County.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**JURY DEMAND**

252.   Plaintiffs demand a jury trial as to all issues so triable.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of action, as follows:

1.   General damages and special damages according to proof at trial, but in no event less than $1,000,000.00;

2.   As against the human and non-governmental defendants, punitive damages as allowed by law;

3.   Attorneys' fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

4.   Costs of suit incurred herein; and

5.   Such further relief as the Court deems just and proper.

Dated: January 14, 2021          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

/S/ Shawn A. McMillan
Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.
Adrian M. Paris, Esq.
Attorneys for Plaintiffs

# EXHIBIT 1

1  Shawn A. McMillan, Esq. – SBN: 208529
2  attyshawn@netscape.net
   Stephen D. Daner, Esq. – SBN: 259689
3  steve.mcmillanlaw@gmail.com
4  Adrian M. Paris, Esq. – SBN: 301355
   adrian.mcmillanlaw@gmail.com
5  THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
6  4955 Via Lapiz
   San Diego, California 92122
7  Phone: (858) 646-0069
8  Fax: (858) 746-5283

9  Tiffany T. Chung (SBN 275981)
10 Tiffany@chunglegal.com
   Law Offices of Tiffany Chung
11 800 W. 6th Street, # 800
12 Los Angeles, CA 90017
   Tel: 310-363-0327
13 Fax: 888-402-2078

14
   Attorneys for Plaintiffs Edison Gatlin, by and through
15 his successors in interest, Clarissa Simms and Edward Gatlin;
16 and Clarissa Simms and Edward Gatlin, individually

17
18             UNITED STATES DISTRICT COURT
19           NORTHERN DISTRICT OF CALIFORNIA
20

21 | EDISON GATLIN, a deceased minor, | Case No. |
   | by and through his successors in |  |
22 | interest, CLARISSA SIMMS and | **DECLARATION OF HEIRS BY** |
   | EDWARD GATLIN; CLARISSA | **EDWARD GATLIN** |
23 | SIMMS, an individual; and EDWARD |  |
24 | GATLIN, an individual, |  |
25 |            Plaintiffs, |  |
26 |  |  |
27 |            v. |  |
28

1

2  CONTRA COSTA COUNTY
   CHILDREN & FAMILY SERVICES, a
3  public entity; CONTRA COSTA
   COUNTY EMPLOYMENT AND
4  HUMAN SERVICES DEPARTMENT,
   a public entity; CONTRA COSTA
5  CHILD PROTECTIVE SERVICES, a
   public entity; COUNTY OF CONTRA
6  COSTA, a public entity; BARBARA
   CRESPO, an individual; CHRISTY
7  ROWLAND, an individual; CHRISTY
   ROLAND, an individual;
8  ALEXANDRIA KOTRAN, an
   individual; ELEANOR WALKER, an
9  individual; JENNIFER LUND, an
   individual; KIMBERLY BAKER, an
10 individual; MARCY WILLIAMSON,
   an individual; CRAIG THURMOND,
11 an individual; LESLIE DAVIS, an
   individual; KERISSA LYNCH, an
12 individual; GEORGETTE SHIPE, an
   individual;  KIMBERLY MILLER, an
13 individual; JAMIE LOPEZ, an
   individual; VALLEY-MOUNTAIN
14 REGIONAL CENTER, INC., a
   California Corporation; JACQUIE
15 PEARSON, an individual;  DANIELLE
   WELLS, an individual; CINDY MIX,
16 an individual; TRACY VAUGHN, an
   individual; JULIE de DIEGO, an
17 individual; DANIELLE ESBIT-
   AYALA, an individual; RYAN LEE, an
18 individual; DESIREE CLIFTON, an
   individual; ANGEL'S HAVEN 2
19 RESIDENTIAL CARE, a California
   Corporation; ANGEL'S HAVEN,
20 business form unknown; ANGEL'S
   HAVEN 3, business form unknown;
21 ARQUERO GANILYN, an individual;
   RENALYN ARQUERO, an individual;
22 FRANCISCO LLANES, an individual;
   CHESCKA MENDOZA, an individual;
23 JESSICA PATE, an individual;
   CECILE CORPUZ LLANES, an
24 individual; GABRIEL TAURO, an
   individual; MARIA CECILIA TAURO,
25 an individual; JEFFERY COLLINS, an
   individual; Jenna-Ray Foster Family
26 Home, business form unknown;
   JENNIFER DILLINGHAM, an
27 individual; and DOES 1 through 50,

28

1 | inclusive,

2 |          Defendants.

3

4

5       I, EDWARD GATLIN, declare and state the following:

6 | 1.     I am a competent adult over the age of eighteen, the natural father of

Decedent, Edison Gatlin, born, August 17, 2005.

7 | 2.     Decedent was 14 years old at the time of his death and was not married and

8 | had no children.

9 | 3.     I am personally familiar with the facts contained herein and I would and could

10 | competently testify thereto if called upon to do so.

11 | 4.     The Decedent's death occurred on December 8, 2019, in the County of San

12 | Joaquin, California.

13 | 5.     There is no other proceeding that is now pending in California for the

14 | administration of the Decedent's estate.

15 | 6.     Pursuant to California Code of Civil Procedure §377.11, I am one of

16 | decedent's successor-in-interest, as Decedent Edison Gatlin was my biological son.

17 | 7.     I have attached hereto as Exhibit "1", a true and correct copy of Decedent's

18 | birth certificate.

19       I, EDWARD GATLIN, declare under penalty of perjury, that the foregoing is

20 | true and correct.  Executed this 14th day of January, 2021, in Evansville, Indiana.

21

22

23          *Edward Gatlin*

        Edward Gatlin

24

25

26

27

28

3
DECLARATION OF HEIRS

EXHIBIT "1"

CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN FRANCISCO

SAN FRANCISCO, CALIFORNIA

**1052005324080**
STATE FILE NUMBER

**CERTIFICATE OF LIVE BIRTH**
**STATE OF CALIFORNIA**
USE BLACK INK ONLY

**1200538007683**
LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| | | | | |
|---|---|---|---|---|
| **THIS CHILD** | 1A. NAME OF CHILD — FIRST (GIVEN) **EDISON** | 1B. MIDDLE **SINCERE** | | 1C. LAST (FAMILY) **GATLIN** |

| 2. SEX **MALE** | 3A. THIS BIRTH SINGLE, TWIN, ETC. **TWIN** | 3B. IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC. **2ND** | 4A. DATE OF BIRTH — MM/DD/CCYY **08/17/2005** | 4B. HOUR — 24 HOUR CLOCK TIME **2042** |

| **PLACE OF BIRTH** | 5A. PLACE OF BIRTH — NAME OF HOSPITAL OR FACILITY **UNIV. OF CALIFORNIA MED CENTER** | 5B. STREET ADDRESS — STREET, NUMBER, OR LOCATION **505 PARNASSUS AVE.** | |
|---|---|---|---|
| | 5C. CITY **SAN FRANCISCO** | 5D. COUNTY **SAN FRANCISCO** | 5E. PLANNED PLACE OF BIRTH **HOSPITAL** |

| **FATHER OF CHILD** | 6A. NAME OF FATHER — FIRST (GIVEN) **EDWARD** | 6B. MIDDLE **EUGENE** | 6C. LAST (FAMILY) **GATLIN** | 7. STATE OF BIRTH **CA** | 8. DATE OF BIRTH **02/19/1974** |
|---|---|---|---|---|---|

| **MOTHER OF CHILD** | 9A. NAME OF MOTHER — FIRST (GIVEN) **CLARISSA** | 9B. MIDDLE **YVETTE** | 9C. LAST (MAIDEN) **SIMMS** | 10. STATE OF BIRTH **CA** | 11. DATE OF BIRTH **06/10/1980** |

| **INFORMANT CERTIFICATION** | 12A. PARENT OR OTHER INFORMANT — SIGNATURE *Edward Gatlin* | 12B. RELATIONSHIP TO CHILD **FATHER** | 12C. DATE SIGNED **08/20/2005** |
|---|---|---|---|

| **CERTIFICATION OF BIRTH** | I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE DATE, HOUR AND PLACE STATED. 13A. ATTENDANT OR CERTIFIER — SIGNATURE — DEGREE OR TITLE | 13B. LICENSE NUMBER **AA88919** | 13C. DATE SIGNED **08/20/2005** |
|---|---|---|---|
| | 13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT **KATHERINE BIANCO, MD 505 PARNASSUS AVE, SAN FRANCISCO** | 14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT | |

| **LOCAL REGISTRAR** | 15A. DATE OF DEATH | 15B. STATE FILE NO. | 16. LOCAL REGISTRAR — SIGNATURE **MITCHELL KATZ, M.D.** | 17. DATE ACCEPTED FOR REGISTRATION **08/31/2005** |
|---|---|---|---|---|

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO } SS.

This is a true and exact reproduction of the document officially registered and placed on file in the office of the SAN FRANCISCO COUNTY CLERK.

ATTEST      CHANNEL BEASLEY

DATE ISSUED    10/14/2020

The copy is not valid unless prepared on engraved border display and the date and signature of the Deputy County Clerk.





000413148

CASANFRA02

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

1  Shawn A. McMillan, Esq. – SBN: 208529
2  attyshawn@netscape.net
   Stephen D. Daner, Esq. – SBN: 259689
3  steve.mcmillanlaw@gmail.com
4  Adrian M. Paris, Esq. – SBN: 301355
   adrian.mcmillanlaw@gmail.com
5  THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
6  4955 Via Lapiz
   San Diego, California 92122
7  Phone: (858) 646-0069
8  Fax: (858) 746-5283

9  Tiffany T. Chung (SBN 275981)
10 Tiffany@chunglegal.com
   Law Offices of Tiffany Chung
11 800 W. 6th Street, # 800
12 Los Angeles, CA 90017
   Tel: 310-363-0327
13 Fax: 888-402-2078

14 Attorneys for Plaintiffs Edison Gatlin, by and through
15 his successors in interest, Clarissa Simms and Edward Gatlin;
   and Clarissa Simms and Edward Gatlin, individually
16

17

18                  UNITED STATES DISTRICT COURT

19                NORTHERN DISTRICT OF CALIFORNIA

20

21  EDISON GATLIN, a deceased minor,        Case No.
    by and through his successors in
22  interest, CLARISSA SIMMS and            **DECLARATION OF HEIRS BY**
    EDWARD GATLIN; CLARISSA                 **CLARISSA SIMMS**
23  SIMMS, an individual; and EDWARD
    GATLIN, an individual,
24
25              Plaintiffs,
26
27              v.
28

                              1

1

2   CONTRA COSTA COUNTY
CHILDREN & FAMILY SERVICES, a

3   public entity; CONTRA COSTA
COUNTY EMPLOYMENT AND

4   HUMAN SERVICES DEPARTMENT,
a public entity; CONTRA COSTA

5   CHILD PROTECTIVE SERVICES, a
public entity; COUNTY OF CONTRA

6   COSTA, a public entity; BARBARA
CRESPO, an individual; CHRISTY

7   ROWLAND, an individual; CHRISTY
ROLAND, an individual;

8   ALEXANDRIA KOTRAN, an
individual; ELEANOR WALKER, an

9   individual; JENNIFER LUND, an
individual; KIMBERLY BAKER, an

10  individual; MARCY WILLIAMSON,
an individual; CRAIG THURMOND,

11  an individual; LESLIE DAVIS, an
individual; KERISSA LYNCH, an

12  individual; GEORGETTE SHIPE, an
individual;  KIMBERLY MILLER, an

13  individual; JAMIE LOPEZ, an
individual; VALLEY-MOUNTAIN

14  REGIONAL CENTER, INC., a
California Corporation; JACQUIE

15  PEARSON, an individual;  DANIELLE
WELLS, an individual; CINDY MIX,

16  an individual; TRACY VAUGHN, an
individual; JULIE de DIEGO, an

17  individual; DANIELLE ESBIT-
AYALA, an individual; RYAN LEE, an

18  individual; DESIREE CLIFTON, an
individual; ANGEL'S HAVEN 2

19  RESIDENTIAL CARE, a California
Corporation; ANGEL'S HAVEN,

20  business form unknown; ANGEL'S
HAVEN 3, business form unknown;

21  ARQUERO GANILYN, an individual;
RENALYN ARQUERO, an individual;

22  FRANCISCO LLANES, an individual;
CHESCKA MENDOZA, an individual;

23  JESSICA PATE, an individual;
CECILE CORPUZ LLANES, an

24  individual; GABRIEL TAURO, an
individual; MARIA CECILIA TAURO,

25  an individual; JEFFERY COLLINS, an
individual; Jenna-Ray Foster Family

26  Home, business form unknown;
JENNIFER DILLINGHAM, an

27  individual; and DOES 1 through 50,

28

2

DECLARATION OF HEIRS

inclusive,

Defendants.

I, CLARISSA SIMMS, declare and state the following:

1. I am a competent adult over the age of eighteen, the natural mother of Decedent, Edison Gatlin, born, August 17, 2005.

2. Decedent was 14 years old at the time of his death and was not married and no children.

3. I am personally familiar with the facts contained herein and I would and could competently testify thereto if called upon to do so.

4. The Decedent's death occurred on December 8, 2019, in the County of San Joaquin, California.

5. There is no other proceeding that is now pending in California for the administration of the Decedent's estate.

6. Pursuant to California Code of Civil Procedure §377.11, I am one of decedent's successor-in-interest, as Decedent Edison Gatlin was my biological son.

7. I have attached hereto as Exhibit "1", a true and correct copy of Decedent's birth certificate.

I, CLARISSA SIMMS, declare under penalty of perjury, that the foregoing is true and correct.  Executed this 14th day of January, 2021, in Evansville, Indiana.

_Clarissa Simms_

Clarissa Simms

DECLARATION OF HEIRS

EXHIBIT "1"

CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN FRANCISCO

SAN FRANCISCO, CALIFORNIA

1052005324080

STATE FILE NUMBER

**CERTIFICATE OF LIVE BIRTH**
**STATE OF CALIFORNIA**
USE BLACK INK ONLY

1200538007683

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

| | | | | |
|---|---|---|---|---|
| THIS CHILD | 1A. NAME OF CHILD — FIRST (GIVEN) EDISON | 1B. MIDDLE SINCERE | | 1C. LAST (FAMILY) GATLIN |
| | 2. SEX MALE | 3A. THIS BIRTH SINGLE TWIN TRIPLE ETC. TWIN | 3B. IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC. 2ND | 4A. DATE OF BIRTH — MM/DD/CCYY 08/17/2005 | 4B. HOUR — 24 HOUR CLOCK TIME 2042 |
| PLACE OF BIRTH | 5A. PLACE OF BIRTH — NAME OF HOSPITAL OR FACILITY UNIV. OF CALIFORNIA MED CENTER | | 5B. STREET ADDRESS — STREET, NUMBER, OR LOCATION 505 PARNASSUS AVE. | |
| | 5C. CITY SAN FRANCISCO | | 5D. COUNTY SAN FRANCISCO | 5E. PLANNED PLACE OF BIRTH HOSPITAL |
| FATHER OF CHILD | 6A. NAME OF FATHER — FIRST (GIVEN) EDWARD | 6B. MIDDLE EUGENE | 6C. LAST (FAMILY) GATLIN | 7. STATE OF BIRTH CA | 8. DATE OF BIRTH 02/19/1974 |
| MOTHER OF CHILD | 9A. NAME OF MOTHER — FIRST (GIVEN) CLARISSA | 9B. MIDDLE YVETTE | 9C. LAST (MAIDEN) SIMMS | 10. STATE OF BIRTH CA | 11. DATE OF BIRTH 06/10/1980 |
| INFORMANT CERTIFICATION | 12A. PARENT OR OTHER INFORMANT — SIGNATURE *[signature]* | | | 12B. RELATIONSHIP TO CHILD FATHER | 12C. DATE SIGNED 08/20/2005 |
| CERTIFICATION OF BIRTH | 13A. ATTENDANT OR CERTIFIER — SIGNATURE — DEGREE OR TITLE *[signature]* | | | 13B. LICENSE NUMBER AA88919 | 13C. DATE SIGNED 08/20/2005 |
| | 13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT KATHERINE BIANCO, MD 505 PARNASSUS AVE, SAN FRANCISCO | | | 14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT | |
| LOCAL REGISTRAR | 15A. DATE OF DEATH | 15B. STATE FILE NO. | 16. LOCAL REGISTRAR — SIGNATURE MITCHELL KATZ, M.D. | | 17. DATE ACCEPTED FOR REGISTRATION 08/31/2005 |

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO } SS.

This is a true and exact reproduction of the document officially registered and placed on file in the office of the SAN FRANCISCO COUNTY CLERK.

ATTEST ____ CHANNEL BEASLEY

DATE ISSUED 10/14/2020

The copy is not valid unless prepared on in engraved border displaying the date and signature of the Deputy County Clerk.



000413148



CASANFRA02

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT 2

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
## DEPARTMENT:  21
## HEARING DATE:   12/02/20

Pursuant to Evidence Code § 452(d), Plaintiff requests the Court to take judicial notice of the following:

1.  Exhibit A—Complaint for damages and demand for jury trial filed by Plaintiff on August 19, 2020.
2.  Exhibit B— Complaint for damages and demand for jury trial filed by Plaintiff on September 23, 2020 in civil action in Los Angeles County, entitled *Cabayan v. Petri Entertainment, LLC, et al.* Case No. 20TRCV00671.

The unopposed request is granted.

---

**13.  TIME:  9:00   CASE#: MSC20-01621**
**CASE NAME: CABAYAN VS HASSEN, ET AL.**
**HEARING ON MOTION TO/FOR JOINDER OF REALLW APC TO MTN TO COMPEL ARB & STAY FILED BY REALLAW, A. P. C., A BUSINESS**
**\* *TENTATIVE RULING:* \***

Reallaw, APC's motion to compel arbitration and stay proceedings is denied.  See Line 12.

---

**14.  TIME:  9:00   CASE#: MSC20-01665**
**CASE NAME: FENNER VS TOLL BROTHERS, INC.,**
**HEARING ON MOTION TO/FOR COMPEL ARBITRATION FILED BY TOLL BROTHERS, INC., TOLL BROTHERS REAL ESTATE, INC., SHAPELL**
**\* *TENTATIVE RULING:* \***

Continued by stipulation to 1/20/21 at 9:00 am.

---

**15.  TIME:  9:00   CASE#: MSN20-1511**
**CASE NAME: GATLIN VS CONTRA COSTA COUNTY**
**HEARING ON PETITION FOR ORDER PERMITTING A LATE CLAIM ( FILED BY CLARISSA SIMMS AND EDWARD GATLIN)**
**\* *TENTATIVE RULING:* \***

Petitioners' petition for relief from the requirement of presenting a government claim is denied without prejudice to petitioners' right to file a civil action alleging timely presentation of a government claim.  (*See Ngo v County of Los* Angeles (1989) 207 Cal.App.3d 946, 951-952.)

**Background**

# CONTRA COSTA SUPERIOR COURT
MARTINEZ, CALIFORNIA
DEPARTMENT:   21
HEARING DATE:   12/02/20

Decedent, Edison Gatlin, was a 14-year old boy who died in his sleep on December 8, 2019, while in foster care at Angels Haven 2, a group home for disabled youth.  Edison had suffered from cerebral palsy, intellectual disability, and epilepsy with frequent seizures.  He was first placed in foster care by the County on September 24, 2014 on an emergency basis after his mother was incarcerated and his father was absent.

On May 7, 2019, he became a resident of Angels Haven 2, where he remained until his death on December 8, 2019.

On June 5, 2020, his parents, Edward Gatlin and Clarissa Sims, presented a government claim to the County alleging it failed to provide adequate care, monitoring, or supervision and was negligent in other ways.  The claim suggests state law claims for negligence, wrongful death, a survival cause of action, and federal claims for civil rights violations under 42 U.S.C. § 1942.  Only the state law claims are required to be preceded by a government claim.

The government claim is ambiguous regarding the injury on which it is based.  The face sheet states the "damage or injury" occurred on December 8, 2019, the date that Edison died.  On page 2, the attachment also lists that date, but on page 3 it goes on to allege that the County "failed multiple times in their duties to provide adequate care to Edison, to monitor and supervise him, and to update Claimants . . . regarding the shortfalls in [his] health and living conditions over the course of several years . . ." (Ex. C to Chung Decl. at 3:14-17.)

The County rejected portions of petitioners' government claim as untimely because aspects of it could go back as far as 2014, when Edison was first placed in foster care.

Plaintiffs presented an application for late claim relief on July 29, 2020.  The County denied it on September 8, 2020 for the same reasons.

Plaintiffs then filed this petition under Government Code section 946.6, although they requested the wrong relief, asking that their late claims "be received and acted on," whereas the remedy under section 946.6 is to be relieved from the requirement of presenting a government claim at all.  (See Gov't C. § 945.4, 946.6 (a).)

The County opposes the petition only as to state law claims that accrued before July 29, 2019, one year before plaintiffs presented their application for late claim relief, on the assumption that petitioners presented their late claim application on the last possible date, one year after accrual of their cause of action.  The County argues that petitioners have submitted no evidence to extend the time any longer than that under Government Code section 911.4 (c.).

## Discussion

At the outset, it is not clear that petitioners even need to file this petition.  If all they wish to sue about is Edison's death on December 8, 2019, their June 5, 2020 government claim is timely.

Assuming that is not the case, however, and they wish to complain about events going

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
## DEPARTMENT: 21
## HEARING DATE: 12/02/20

back to when the County first took custody of Edison in 2014, this case does not reflect the typical one in which a section 946.6 petition is filed. The typical case involves a cause of action based on a single incident, such as a car accident, where the date of accrual is obvious, but for some reason the plaintiff failed to present a government claim within six months and seeks relief from that error. Or it involves a medical malpractice claim, where the date of injury is certain, but the date of discovery is not.

In the latter type of case, courts and plaintiffs are faced with a dilemma because there are two basic approaches a plaintiff can take when faced with a government claim that has been rejected for untimeliness: (1) the plaintiff can file a lawsuit anyway, taking the position that the claim was timely because of a delay in discovery of the cause of action; or (2) the plaintiff can file a section 946.6 petition, conceding for purposes of the petition that the claim was late, but asking for relief from the claim presentation requirement based on excusable neglect or other statutory grounds.

Earlier decisions effectively stated that these approaches were inconsistent and that the issue regarding when the cause of action accrued could be litigated only in the civil action, where either side had the right to have a jury decide that issue on a full evidentiary record. (*See Ngo v County of Los Angeles, supra,* 207 Cal.App.3d 946, 951 ("It seems clear to us from the language of the statute and the language in *Toscano* that the court in a proceeding under section 946.6 lacks the power to determine questions that should properly be left to a jury.") However, later decisions recognized that the accrual issue must sometimes be decided in a 946.6 proceeding because various aspects of 946.6 relief depend upon it, including whether an application for late claim relief was presented within one year of the accrual of the cause of action. (*See DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 460; *see also* Gov't C. § 946.6 (c) (petition must show the application for late claim relief was made within time specified in section 911.4 (b) (i.e., one year after accrual of the cause of action).)

Thus, the latest decisions suggest that the court deciding the 946.6 petition may take any of three approaches: (1) deny the petition because the issue of whether a claim was timely presented is not properly before the court; (2) consider accrual on a 946.6 petition if necessary to the court's ruling, without precluding a second court from coming to a different conclusion in a legal action for damages that alleges timely presentation of the claim; or (3) consider timeliness in ruling on a 946.6 petition and issue a ruling having a preclusive effect in the independent action for damages. (*DeVore, supra,* 221 Cal.App.4th at 460.)

The court elects to take the first approach here. This case presents a fact pattern that may involve different causes of action based on similar injuries inflicted on different dates. (*See Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788.) It may involve continuous accrual as to certain injuries. (*See Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192; *see Natural Soda Products Co. v. Los Angeles* (1943) 23 Cal. 2d 193, 202-203 (the purpose of the claim presentation requirement "is best served if the entire sequence of events giving rise to the injury is regarded as the 'occurrence from which the damage arose,' for damages can be assessed accurately only when the sequence is completed and the total injury taken into account"); *Amador Valley Investors v. City of Livermore* (1974) 43 Cal. App. 3d 483, 489-490.) It may involve delayed discovery of certain causes of action or injuries. (*See Curtis T. v. County*

# CONTRA COSTA SUPERIOR COURT
## MARTINEZ, CALIFORNIA
### DEPARTMENT:   21
### HEARING DATE:   12/02/20

---

*of Los Angeles* (2004) 123 Cal.App.4th 1405, 1418; *Whitfield v. Roth* (1974) 10 Cal.3d 874, 885.)

A section 946.6 proceeding does not provide a full evidentiary record and contains no explicit mechanism for determination that certain claims are timely and others are not, or that no claim is required at all for certain claims but is for others. It is an all or nothing proceeding that relieves the petitioner of the obligation of presenting a government claim at all. Given the complexities of the accrual issues in this case, the court declines to resolve them here. (*See Santee v. Santa Clara County Office of Educ.* (1990) 220 Cal.App.3d 702, 711-712.)

Plaintiffs should simply file their civil lawsuit as soon as possible, allege they presented a timely claim on June 5, 2020, and litigate all timeliness issues on motions for summary adjudication, in limine, or at trial.

---

16. TIME:  9:00   CASE#: MSN20-1525
CASE NAME: ROBERT YAMAT VS PEOPLE OF THE
HEARING ON PETITION TO/FOR RETURN PROPERTY ILLEGALLY SEIZED,
FILED BY ROBERT YAMAT
* *TENTATIVE RULING:* *

The petition is denied without prejudice due to a failure to file a proof of service.

---

17. TIME:  9:00   CASE#: MSN20-1537
CASE NAME: SHAH VS. AMERIPRISE
HEARING ON MOTION TO/FOR COMPEL PLTF TO PROVIDE RESP TO SUPLMT
INTRG, FILED BY AMERIPRISE AUTO & HOME INSURANCE,
* *TENTATIVE RULING:* *

Unopposed motion to compel plaintiff to provide a response to the supplemental interrogatory is granted. Sanctions are awarded against plaintiff in the amount of $845. The amount is less than requested because defense counsel failed to identify how much time was attributable to preparing a reply and attending the hearing, which are unlikely to occur.

The response and sanctions are due no later than December 30, 2020.

---