UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDISON GATLIN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 21-cv-00370-SI<br><br>**ORDER DENYING COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 176 |

County Defendants move for judgment on the pleadings as to the case plan allegations contained in the Fourth and Fifth Causes of Action in plaintiffs' Second Amended Complaint. Dkt. No. 176. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for May 2, 2025.

**BACKGROUND**

The factual and procedural background of this case are described more fully in the Court's prior order concerning the motions to dismiss the First Amended Complaint. Dkt. No. 129. This order does not recount the allegations in full except as necessary to resolve the pending motion. To summarize, this case is brought by Edison Gatlin, a deceased minor, by and through his successors in interest, parents Clarissa Simms and Edward Gatlin. Edison was born on August 17, 2005, severely disabled with cerebral palsy, hydrocephalus, chronic lung disease, and epilepsy. Dkt. No. 130 ("SAC") ¶ 62. On September 19, 2014, he was taken into the custody of Contra Costa County. He remained in foster care for the next five years, moving through several different placements, all of which the complaint alleges were inadequate and not equipped to care for Edison's serious medical needs. In December 2019, while residing at the Angel's Haven 2 group home, Edison died

of septicemia, "which was totally treatable with common antibiotics." *Id.* ¶¶ 178, 180.

On June 28, 2023, plaintiffs filed the First Amended Complaint. Dkt. No. 95 ("FAC"). County defendants and Valley Mountain Regional Center defendants moved to dismiss.[1] Dkt. Nos. 110, 115. On December 21, 2023, the Court issued an order granting the motions in part and denying in part, with leave to amend. Dkt. No. 129.

On January 12, 2024, plaintiffs filed the Second Amended Complaint ("SAC"). Dkt. No. 130. The SAC brings four claims for relief under 42 U.S.C. § 1983 and three claims under California state law. County defendants and VMRC defendants again moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 131, 132. On August 16, 2024, the Court issued an order granting the motions in part and denying in part. Dkt. No. 146. Plaintiffs elected not to file a third amended complaint, making the SAC the operative complaint in the case.

County defendants now move for judgment on the pleadings under Rule 12(c).

**LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The court must accept "all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law." *Lyon v. Chase Nat'l Bank, USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005)).

---

[1] "County defendants" are: Contra Costa County ("the County"); Craig Thurmond; Barbara Crespo; Christy Roland; Alexandria Kotran; Eleanor Walker; Kimberly Baker; Leslie Davis; Marcy Williamson; Kerissa Lynch; and Georgette Shipe.
"VMRC defendants" are: Valley Mountain Regional Center, Inc. ("VMRC"); Danielle Wells; Tracy Vaughn; and Julie De Diego. In March 2025, VMRC defendants and plaintiffs reached a settlement and the claims against VMRC defendants were dismissed. *See* Dkt. No. 174.

**DISCUSSION**

County defendants' present motion targets the case planning allegations contained in the Fourth Claim, for breach of federal child welfare statutes, and the Fifth Claim, for breach of mandatory duties.[2] County defendants argue that plaintiffs' case planning claims are premised on the theory that the County never created a case plan for Edison *at all*, but that in fact "at least eleven separate case plans were created, filed, and reviewed and signed by a state juvenile court judge." Dkt. No. 176, Mot. at 4. County defendants attach these case plans in support of their motion, Dkt. No. 177, arguing that the records are properly subject to judicial notice. Dkt. No. 182, Reply at 9. In the alternative, County defendants argue they are entitled to qualified immunity from the case plan claims.

In response, plaintiffs clarify that their case plan claims have never been premised on the absence of *any* case plan but that "the gravamen of Plaintiffs' Fourth Claim for Relief centers on the fact that no Case Plan was ever created that meets the statutory requirements of 42 U.S.C. § 675(1)." Dkt. No. 181, Opp'n at 1. They argue that County defendants "improperly attempt to resolve factual disputes by requesting judicial notice of several deficient case plans" and that the juvenile court records attached to the motion are not properly before the Court at this stage. *Id.* Plaintiffs also provide what is essentially an expert declaration to support their position that none of the case plans County defendants attach, in any event, meet the statutory requirements. *See* Dkt. No. 181-1, Suter Decl.

**I.     Judicial Notice**

At the outset, the Court notes that neither side seeks to convert the present motion into a motion for summary judgment, and the Court finds it would be inappropriate to do so on the present record.

---

[2] At one point, County defendants' motion refers to the Fourth Claim as the *Monell* claim, but the Court presumes this is an error. *See* Dkt. No. 176 at 4. The *Monell* claim is brought as the Third Claim of the SAC. Following the Court's most recent order on the motion to dismiss the SAC, no case plan allegations remain as part of the *Monell* claim. *See* Dkt. No. 146 at 29.

The Court will decline to take judicial notice of the case plans and other juvenile court records attached to the motion. For the most part, these are precisely the types of disputed facts that cannot be assumed on a request for judicial notice. As plaintiffs explain in their opposition brief, the dispute is not about whether the County ever issued any document labeled "case plan" but whether the County "create[d] a case plan *that met the mandatory requirements of 42 U.S.C. § 675(1) . . . .*" Opp'n at 21-22 (emphasis added); *see also* SAC ¶ 105 (". . . no adequate 'case plan' as that term is described in 42 U.S.C. §675 was ever created and/or implemented by Contra Costa County and/or its employees . . ."). County defendants now attach Edison's juvenile case records for the purpose of defeating plaintiffs' theory. "The court may judicially notice a fact that is not subject to reasonable dispute . . . ." Fed. R. Evid. 201(b). Whether or not Edison's case plans met the mandatory requirements is not such a fact.

For the same reasons, the Court likewise does not consider the declaration plaintiffs submitted from Loren Suter. Plaintiffs appear to acknowledge that the Suter declaration is premature at this stage but submit the declaration in the event that the Court decides to take judicial notice of the case plans that County defendants submitted. Because the Court does not take judicial notice of the disputed case plans, the Court need not consider the Suter declaration.

The Court DENIES County Defendants' request for judicial notice.[3]

**II.    Qualified Immunity**

County defendants alternatively argue that "the County social workers are entitled to qualified immunity because there was no existing precedent that would have put them on notice that developing and implementing an allegedly 'inadequate' case plan would violate Edison's federal rights." Mot. at 7.

The defense of qualified immunity protects "government officials . . . from liability for civil

---

[3] The Court acknowledges that some confusion regarding plaintiffs' case plan theory may have resulted from a line in its prior order: "By plausibly alleging that no case plan for Edison was *ever* created, plaintiffs have alleged the violation of a mandatory duty." *See* Dkt. No. 146 at 27. However, the Court's ultimate ruling in that order would remain the same, even if that one line of the order were to be stricken.

4

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has: (1) alleged the deprivation of an actual statutory or constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court may begin its analysis with either prong. *Id.* at 236. Here, of the two-pronged analysis, County defendants argue "that the law was not clearly established at the time of the incident." Mot. at 8. The Supreme Court has cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 580 U.S. 76, 79 (2017) (per curiam).

County defendants rely on *Shane v. County of San Diego*, 677 F. Supp. 3d 1127 (S.D. Cal. 2023). In *Shane*, a child died from an accidental drug overdose while in state custody at a group home, and his mother sued County social workers under Section 1983, alleging, among other things, that the defendants violated her son's right to a proper case plan under the federal Adoption Assistance and Child Welfare Act ("CWA").[4] More specifically, her case plan claim alleged that the defendants failed to incorporate adequate mental health services and drug treatment protocols into the child's case plan. *Id.* at 1139. The district court found the social workers entitled to qualified immunity. Although the statute defines what a case plan is and what a case plan must include, it does not require a case plan to specify appropriate mental health and drug treatment protocols. Moreover, the district court explained that "[n]either the Ninth Circuit nor a consensus from other circuits has ruled that a foster child's right to a case plan under the CWA includes a certain degree or level of mental health and drug treatment. While Ninth Circuit law generally recognizes a foster child's right to have a case plan, it does not provide guidance on the particularities of the case plan." *Id.* at 1140 (citing *Henry A. v. Willden*, 678 F.3d 991, 1006 (9th Cir. 2012)). The *Shane* court found qualified immunity applied because binding case law did not

---

[4] The same federal case plan statute is at issue in this case.

clearly establish that the failure "to provide a case plan with appropriate services for his needs such as mental health and drug treatment" violates the CWA's case plan requirements. *Id.*

The Court finds *Shane* distinguishable because here plaintiffs do not allege that Edison's case plan should have included a specific level or type of treatment but that Edison should have received a case plan that complied with the basic requirements outlined in the CWA. In fact, the *Shane* court noted that "Ninth Circuit law generally recognizes a foster child's right to have a case plan[;]" that the CWA "defines a case plan as a written document that describes the type of placement, the appropriateness of the placement, and how the state plans to carry out the placement of the child[;]" and that "[t]he plan must include the child's health and educational records, a description of the child's permanency plan, and a plan for ensuring the child's educational stability." *Id.* at 1140 (citing 42 U.S.C. § 675(1); *Henry A.*, 678 F.3d at 1006). In *Henry A.*, the Ninth Circuit held that the case plan provisions of the CWA, codified at 42 U.S.C. §§ 671(a)(16) and 675(1), are privately enforceable via Section 1983. 678 F.3d at 1008.

In their briefs, neither party discusses *D.C. by and through Cabelka v. County of San Diego*, 445 F. Supp. 3d 869 (S.D. 2020), but the Court finds that case to be more directly on point than *Shane*.[5] There, a foster mother (Cabelka) and her children sued the County and individual social workers after the social workers misrepresented the psychological and behavioral problems of a foster child so that the mother would accept his placement in her home. After this child sexually assaulted Cabelka's children, Cabelka and her children sued under Section 1983, including for violation of the CWA's case planning provisions. Although the district court found that the case plan provisions were not enforceable as to Cabelka's children, the court allowed Cabelka's case plan claim to proceed, rejecting the social workers' defense of qualified immunity. Citing the CWA's mandatory case plan and records provisions regarding what must be supplied as to the foster parent, along with the Ninth Circuit's decision in *Henry A.*, the court held: "At the time of the Social

---

[5] Plaintiffs cite to *D.C.* in their "Notice of Supplemental Authority," Dkt. No. 185, which is more like a short sur-reply to an argument County defendants raise for their first time in their reply brief. *See* Civ. L.R. 7-3(d)(2) (supplementary material may be filed before the noticed hearing date in order to "bring to the Court's attention a relevant judicial opinion *published after the date the opposition or reply was filed* . . . .") (emphasis added).

Worker Defendants' alleged conduct [in 2015], a reasonable County social worker was on notice that he or she was required under the Adoption Act [a/k/a the CWA] to provide a foster parent with a foster child's medical and education records and to create an adequate case plan to assure that services are provided to the foster parent." *Id.* at 877.

So too here. In line with the reasoning of the district court in *D.C. by and through Cabelka*, this Court finds that by 2014 it would have been clear to a reasonable county social worker that the failure to create a case plan that complied with the CWA, for a severely disabled child such as Edison, constituted a violation of Edison's statutory rights. Contrary to County defendants' position, the lack of a Ninth Circuit case directly on point does not dictate a different outcome. *See Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1058 (9th Cir. 2019) (finding county social worker not entitled to qualified immunity, even without a case directly on point, where "[a] reasonable official would have known that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment"); *see also Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citation omitted).[6]

County defendants raise an additional argument for the first time in their reply brief. They argue that the case plan claim in *Henry A.* was directed not to the county defendants but to the State and that there is no authority for holding county defendants liable for the case planning provisions under the CWA, where those provisions are contained in a "spending statute" directed to the States. Reply at 4-6; *see also Henry A.*, 678 F.3d at 1006. The Court ordinarily does not reach arguments raised for the first time in a reply brief. Even reaching this argument, however, County defendants are simply incorrect. As the district court noted in *D.C. by and through Cabelka*, "In *Henry A.*, the Court of Appeals for the Ninth Circuit applied the case plan and records provisions of the Adoption

---

[6] This Court need not expressly resolve whether the right at issue was clearly established in 1980, with the passage of the CWA, or in 2012 when the Ninth Circuit held in *Henry A.* that the case planning provisions of the CWA are privately enforceable through Section 1983. The events at issue in this case occurred between September 2014 through December 2019.

7

Act to the Clark County Manager, the Director of Clark County Department of Family Services, and Clark County. The text of the Adoption Act and Ninth Circuit precedent dictate that the case plan and records provisions of the Adoption Act are enforceable against counties to whom the state has delegated its responsibilities under the Adoption Act and county employees." 445 F. Supp. 3d at 883; *see also* Complaint at 69, *Henry A. v. Willden*, No. 2:10-cv-00528-RCJ-PAL (D. Nev. Apr. 13, 2010), Dkt. No. 1 (stating eighth cause of action for violation of case planning provisions of CWA against all defendants, including the county defendants).

County defendants' bid for qualified immunity on the case planning allegations at this stage of the case is DENIED.

## CONCLUSION

For the foregoing reasons, County defendants' motion for judgment on the pleadings is DENIED.

**IT IS SO ORDERED**.

Dated: April 29, 2025

SUSAN ILLSTON
United States District Judge