UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDISON GATLIN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 21-cv-00370-SI<br><br>**ORDER DENYING COUNTY DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 212 |

On April 29, 2025, the Court denied County defendants' motion for judgment on the pleadings as to the case plan claims contained in the Fourth and Fifth Causes of Action in plaintiffs' Second Amended Complaint. Dkt. No. 188. On July 10, 2025, County defendants moved for leave to file a motion for reconsideration, arguing a change in the law based on the Supreme Court's June 26, 2025 decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. ----, 145 S. Ct. 2219 (2025). Dkt. No. 204. The Court granted County defendants leave to move for reconsideration and set a briefing schedule. Dkt. No. 208. The matter is now fully briefed. *See* Dkt. Nos. 212, 222, 225.

County defendants argue that, following *Medina*, foster children such as plaintiff Edison Gatlin no longer have a private right of action to enforce the case planning provisions of the federal Adoption Assistance and Child Welfare Act ("CWA"), codified at 42 U.S.C. §§ 671(a)(16) and 675(1). The Ninth Circuit first recognized such a right in *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012).[1] County defendants argue that the rationale underlying the Ninth Circuit's reasoning in

---

[1] As the Ninth Circuit has explained, the case plan provisions of the CWA are an example of a "spending statute[.]" *Henry A.*, 678 F.3d at 1006. The State "agree[s] to administer its foster care system in accordance with these federal laws in return for financial assistance from the federal government." *Id.*

1  *Henry A.* is no longer viable after *Medina*.

2        To understand the context for this motion, the Court summarizes the relevant Supreme Court
3  jurisprudence regarding whether a federal statute creates an individual right enforceable via 42
4  U.S.C. § 1983. In *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), the Supreme Court
5  articulated a "three-prong test for determining whether a federal statute creates an individual right."
6  *Henry A.*, 678 F.3d at 1005. The test required: "1) that Congress intended the statutory provision to
7  benefit the plaintiff; 2) that the asserted right is not so 'vague and amorphous' that its enforcement
8  would strain judicial competence; and 3) that the provision couch the asserted right in mandatory
9  rather than precatory terms." *Id.* (quoting *Watson v. Weeks*, 436 F.3d 1152, 1158 (9th Cir. 2006)).

10        In 2002, the Supreme Court decided *Gonzaga University v. Doe*, 536 U.S. 273 (2002). That
11  case examined whether the Family Educational Rights and Privacy Act of 1974, enacted through
12  Congress's spending power, conferred upon individual students a federal right to enforcement in
13  damages suits under Section 1983. *Gonzaga* emphasized that "unless Congress speaks with a clear
14  voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions
15  provide no basis for private enforcement by § 1983." *Id.* at 280 (quoting *Pennhurst State Sch. &
16  Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)) (internal quotation marks and brackets omitted). The
17  Supreme Court explained, "In legislation enacted pursuant to the spending power, the typical
18  remedy for state noncompliance with federally imposed conditions is not a private cause of action
19  for noncompliance but rather action by the Federal Government to terminate funds to the State." *Id.*
20  (quoting *Pennhurst*, 451 U.S. at 28). *Gonzaga* clarified that *Blessing* should not be read to allow
21  "plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of
22  interest that the statute is intended to protect[.]" *Id.* at 283. Looking to the language of § 1983, the
23  *Gonzaga* Court explained, "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may
24  be enforced under the authority of that section." *Id.* It was after *Blessing* and *Gonzaga* that the
25  Ninth Circuit rendered its decision in the *Henry A.* case on the case planning statute in question here.

26        Two years ago, in *Talevski*, the Supreme Court rejected the petitioners' argument that
27  "Spending Clause statutes do not give rise to privately enforceable rights under 42 U.S.C. § 1983[.]"
28  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 178 (2023). The Court then went

on to analyze whether the two provisions of the Federal Nursing Home Reform Act (FNHRA) in that case did indeed create privately enforceable rights. The Court explained, "our precedent sets a demanding bar: Statutory provisions must *unambiguously* confer individual federal rights." *Id.* at 180 (citing *Gonzaga*, 536 U.S. at 280). *Talevski* affirmed the viability of the method used in *Gonzaga* "for ascertaining unambiguous conferral" of individual enforcement rights. *See id.* at 183; *see also Medina*, 145 S. Ct. at 2234 ("*Talevski* reaffirmed that '*Gonzaga* sets forth our established method' for determining whether a spending-power statute confers individual rights.") (citing *Talevski*, 599 U.S. at 183). The *Talevski* Court concluded that the provisions at issue there, contained in that part of the statute "which expressly concerns '[r]equirements *relating to residents' rights*'" exemplified the atypical case in which a spending power statute created an individually enforceable right under Section 1983. 599 U.S. at 184.

This year, the Supreme Court clarified that, post-*Gonzaga*, courts should no longer apply the so-called "*Blessing* test" because "*Gonzaga* rejected any reading of our prior cases that would permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Medina*, 145 S. Ct. at 2234 (citing *Gonzaga*, 536 U.S at 283) (internal quotation marks and brackets omitted). At issue in *Medina* was a provision of the Medicaid Act known as the "any-qualified-provider" provision, which the Supreme Court found did not confer a right enforceable under § 1983.

Having reviewed the analysis in *Henry A.*, the Supreme Court jurisprudence, and the statutes at issue in this and in the Supreme court cases, the Court will deny County defendants' motion for reconsideration of its prior ruling on the case plan claims. The Court asks whether "the reasoning or theory of . . . prior circuit precedent is clearly irreconcilable with the reasoning or theory of intervening higher authority" such that the Court should treat "the prior circuit opinion as having been effectively overruled." *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). "This is a high standard." *Rodriguez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, . . . or for the intervening higher authority to 'cast doubt' on the prior circuit precedent[.]" *Lair*, 697 F.3d at 1207

3

(citations omitted).

Although it is a close call, the Court disagrees with County defendants that the Ninth Circuit's ruling on the case planning provisions of the CWA has been "effectively overruled" by or is "clearly irreconcilable" with *Medina*. *Medina* emphasized that the test articulated in *Gonzaga* is the one that courts are to apply and that the *Blessing* test is overruled. In finding the case planning provisions of the CWA privately enforceable under § 1983, the Ninth Circuit in *Henry A.* applied both *Blessing* and *Gonzaga*. The *Henry A.* court cited *Gonzaga* as having "clarified that the first prong of the *Blessing* test is meant to determine whether Congress 'unambiguously conferred' a federal right." *See Henry A.*, 678 F.3d at 1005 (quoting *Gonzaga*, 536 U.S. at 283). The *Henry A.* court further used the language of *Gonzaga* in finding that "Section 671(a)(16) unambiguously requires the State to provide for the development of a case plan 'for each child'" and that "rights-creating language is readily discernible in § 671(a)(16) because it expresses a clear mandate by using the term 'shall' and discusses how the state must distribute benefits to each child." *Id.* at 1006-07 (quoting *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 171 (D. Mass. 2011)) (internal quotation marks omitted). Thus, while the Ninth Circuit applied the *Blessing* test, it also integrated *Gonzaga* into its analysis. Though there may be "some tension" between the *Henry A.* reasoning and *Medina*, it does not rise to the level that the former is "clearly irreconcilable" with the latter. *See Lair*, 697 F.3d at 1207 (citations omitted).

Lastly, County defendants challenge whether the case plan provisions may be enforceable against a municipality such as the County rather than against the State. The County already made this argument, albeit in less detail, in its reply brief to the motion for judgment on the pleadings. The Court has already rejected this argument, *see* Dkt. No. 188 at 7-8, and agrees with plaintiffs that County defendants improperly seek to relitigate this argument on a motion for reconsideration.[2]

For the reasons stated above, the motion for reconsideration of the Order Denying County

---

[2] The County is also incorrect in its assertion that "*Henry A.* did not concern a claim for monetary damages[.]" *See* Dkt. No. 225 at 8. Though the case planning claim in *Henry A.* was for injunctive relief, the plaintiffs also brought a claim for damages under the "records provisions" of the same CWA subsections. *See Henry A.*, 678 F.3d at 1008 (discussing Count Three under CWA: Records Provisions, "codified at 42 U.S.C. §§ 671(a)(16), 675(1) and 675(5)(D)").

Defendants' Motion for Judgment on the Pleadings, Dkt. No. 188, is DENIED.

**IT IS SO ORDERED**.

Dated: August 26, 2025

SUSAN ILLSTON
United States District Judge